L. P. BRADSHAW, Appellant,

v.

Allene NAUMANN, Appellee.

No. 12287.

Court of Civil Appeals of Texas,
Austin.

Oct. 8, 1975.

Rehearing Denied Nov. 5, 1975.

Harold G. Kennedy, Austin, for appellant.

Bruce Waitz, Waitz, Bretz & Collins, San Antonio, for appellee.

O'QUINN, Justice.

Oscar S. Bradshaw and his wife, Ollie Bradshaw, owned between them 356.41 acres of land in Burnet County consisting of three tracts, on which they lived and carried on farming and ranching pursuits. Two of the tracts, comprising 262 acres, Ollie Bradshaw owned as her separate property, and the remaining tract of 94.41 acres was community property.

In July of 1952 Oscar and Ollie Bradshaw executed a deed to convey all three tracts to their only son, Louis Preston Bradshaw, to the exclusion of their only daughter, Allene Bradshaw Naumann, and reserved a life estate in themselves and in the survivor of them. Oscar Bradshaw died late in December of 1960, and thereafter, in September of 1962, Ollie Bradshaw executed a will in which she left her entire estate to her son, L. P. Bradshaw. Ollie Bradshaw died about nine years later, in August of 1971.

This appeal is from a judgment entered in district court in which three lawsuits were consolidated for trial. In 1971, prior to the death of Ollie Bradshaw, she and her son L. P. Bradshaw granted to Herman Neusch and Carefree Living, Inc., an option to purchase the smallest of the three tracts of land, comprising 50 acres, and thereafter brought suit against Allene Naumann and others. The other defendants later were severed from that action.

After probate of Ollie Bradshaw's will in September of 1971, Allene Naumann brought suit against L. P. Bradshaw and also filed contest of her mother's will in county court, which she later appealed to district court. The consolidation below was of the two actions brought by Allene Naumann and the prior suit Ollie Bradshaw and L. P. Bradshaw brought against Allene Naumann and others in relation to the Neusch option.

Upon trial the jury found, in response to two special issues, that (1) at the time Oscar Bradshaw executed the deed to his son, L. P. Bradshaw, dated July 30, 1952, he was acting under the undue influence of L. P.

Bradshaw or Ollie Bradshaw, and (2) at the time Ollie Bradshaw executed the deed she did not have mental capacity to make a deed. The jury also answered five other special issues favorably to contentions of Allene Bradshaw Naumann.

The trial court overruled L. P. Bradshaw's motion for judgment *non obstante veredicto* and later entered judgment setting aside the deed and in other respects also in favor of Allene Bradshaw Naumann.

L. P. Bradshaw appeals from the judgment and brings thirteen points of error. We will sustain the first two points of error, which we find present controlling issues, and will reverse the judgment of the trial court.

Under the first point Bradshaw contends that there is no evidence of probative force to sustain the jury's answer to Issue No. 1 that Oscar Bradshaw was acting under undue influence of L. P. Bradshaw or Ollie Bradshaw, or either of them, at the time he executed the deed of July 30, 1952.

Under the second point appellant contends there is no evidence to sustain the jury's answer to Issue No. 2 that at the time Ollie Bradshaw made the deed she did not have mental capacity.

■ The rules guiding determination of the existence of undue influence apply substantially alike to wills, deeds, and other instruments. *Rankin v. Rankin*, 105 Tex. 451, 151 S.W. 527, 529 (1912); *Self v. Thornton*, 343 S.W.2d 485, 487 (Tex.Civ.App., Texarkana 1960, writ ref. n. r. e.); *Bounds v. Bounds*, 382 S.W.2d 947, 950 (Tex.Civ.App., Amarillo 1964, writ ref. n. r. e.). Where the deed, as in this case, is otherwise valid, but is attacked on the ground of undue influence, the burden rests on the party making the attack to plead and prove that the instrument is the product of such influence existing at the very time the deed was executed. *Eulenfeld v. Weber*, 428 S.W.2d 383, 387 (Tex.Civ.App., Austin 1968, writ ref. n. r. e.); *Besteiro v. Besteiro*, 65 S.W.2d 759, 761 (Tex.Comm'n App.1933, jdgmt adopted).

■ Undue influence implies the existence of mental capacity subjected to and controlled by an influence, or power, that is dominant, and the party seeking to set aside a deed on the ground of undue influence must prove: "(1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the . . . [maker of the deed] at the time of the execution of the . . . [instrument]; and (3) the execution of a . . . [deed] the maker thereof would not have executed but for such influence." *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex.Sup.1963); *Scott v. Townsend*, 106 Tex. 322, 166 S.W. 1138 (1914).

■ It is settled that every case of undue influence must be decided on its own peculiar facts. *Pearce v. Cross*, 414 S.W.2d 457, 462 (Tex.Sup.1966). In this case we examine the record first to discover whether there is direct evidence tending to support the jury's finding that Oscar Bradshaw was under undue influence of his wife or his son when he executed the deed in 1952 under which all his wife's separate property and their smaller community estate was conveyed to their son. There is testimony from witnesses who quoted Oscar Bradshaw as saying that his wife was running him crazy, that if they had an argument he would give in to her, and that if he had not signed the deed there would have been hell, ". . . so much hell around there that he'd have to leave home."

Appellee concedes that ". . . Texas courts have long held that a testator's declarations are not competent to show the fact of undue influence," but urges that Oscar Bradshaw's declarations were admissible to show the effect of undue influence on his mind. *Pearce v. Cross, supra* ; *Lindley v. Lindley*, 384 S.W.2d 676, 682 (Tex. Sup.1964); *Scott v. Townsend*, 106 Tex. 322, 166 S.W. 1138, 1143 (1914). In *Pearce, supra*, the Supreme Court quoted with approval a statement of the distinction in 1

McCormick & Ray, Texas Evidence, sec. 894 at 667 (2d ed. 1956):

"Undue influence as an invalidating fact consists of two elements: first, the *external*, the words or acts of third persons which bring the pressure to bear; second, the *internal*, the collapse of the testator's own will, produced by such external conduct. It is held that declarations of the testator, of whatever type, are no evidence of the former but only of the latter element." (Emphasis by authors).

Direct evidence of the external element is not pointed out by appellee, and we have been unable to discover such evidence in the record. L. P. Bradshaw, Oscar's son, lived in Ardmore, Oklahoma, and only infrequently visited his father and mother in Burnet County. There was testimony Ollie Bradshaw was a woman of strong will, but no testimony that she forced or influenced her husband to sign the deed they made in 1952. The record does not contain any testimony or other evidence that L. P. Bradshaw asserted undue influence over his father from the son's residence in Oklahoma, or on visits to Texas.

Appellee contends that there was circumstantial evidence of the actual operation of undue influence on Oscar Bradshaw. Appellee points out the unnatural disposition of the wife's property and the community estate to one of only two children, although Oscar Bradshaw was quoted by one witness as saying that he "thought a lot" of his daughter, but his son "wasn't worth the powder it would take to shoot him, and he'd caused them a lot of trouble." Appellee relies upon the circumstances that one witness related concerning visits to the Bradshaw house when Ollie wanted someone to "talk Oscar into going to sleep." The witness mentioned that Bradshaw slept on "the back porch," which actually was a sleeping porch, and told of finding Oscar with too much cover over him, when the weather was cold, and told Ollie she was "going to kill him" with that many quilts over him.

One witness testified that on an occasion Oscar Bradshaw left home for several weeks, and his daughter, at the request of her mother, "hunted the countryside over for ages to find him—and when I say ages, I don't mean years, but I mean, you know, like days. And I don't right now know specifically where she found him at, but he had been gone from home some six weeks or two months that nobody could find him . . . and drove until she found her father, and brought him back home with her. Now where she found him, I can't answer that question, because I really don't know."

Appellee contends "that where (1) a husband sleeps on the back porch, (2) his wife nearly suffocates him with blankets, and (3) he runs away from home, it can be inferred that the husband was harrassed [*sic*] and nagged by his wife," and that such "observations by third persons are external evidence of undue influence by nagging or harrassment [*sic*]."

■ The Supreme Court, in *Rothermel, supra*, recognized that undue influence may be shown by circumstantial, as well as by direct, evidence. We paraphrase the Court's statement to apply to deeds as well as wills, since the rules are applicable to both instruments. All of the circumstances must be considered, and if when considered together they produce a reasonable belief that an influence was exerted that subverted or overpowered the mind of the maker of the deed and resulted in the execution of the instrument in controversy, the evidence is sufficient to sustain the conclusion. "However," the Court added, "the circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence." (369 S.W.2d 922)

The first two circumstances relied upon by appellee, that Oscar Bradshaw slept on the back porch and his wife "nearly suffocated" him with covers in bed, are shown by the record to have occurred some eight

years after the deed was executed and only a short time before Oscar Bradshaw died. It is undisputed that the back porch was a sleeping porch used by both of them. It is not clear when Oscar Bradshaw absented himself from home for a few weeks, but in that circumstance alone we fail to observe evidence of such nagging or harassment from his wife as to constitute undue influence on Oscar Bradshaw when he executed the deed to their son in 1952. Rip Van Winkle, whose wife nagged him, went away to the mountains. Yet, on awakening, Rip, like Oscar Bradshaw, returned home, though he knew that "A sharp tongue is the only edge tool that grows keener with constant use." Washington Irving: *Rip Van Winkle.*

▆ The circumstances relied on as establishing the elements of undue influence fall short of being reasonably satisfactory and convincing in character, and, taken separately or collectively, the circumstances here are equally consistent with the absence of the exercise of undue influence. We hold that there was no evidence of probative force to support the jury's finding that Oscar Bradshaw acted under undue influence of either his son or his wife in making the deed he and his wife executed on July 30, 1952.

Appellant contends that such evidence as might be relative to Ollie Bradshaw's mental condition at the time she executed the deed to her son, on July 30, 1952, does not meet the test stated in *Lee v. Lee*, 424 S.W.2d 609, 611 (Tex.Sup.1968). There the Supreme Court said, ". . . only that evidence of incompetency at other times has probative force which demonstrates that that condition persists and 'has some probability of being the same condition which obtained at the time of the . . .'" making of the instrument.

▆▆ The law presumes that the grantor of a deed had sufficient mental capacity at the time of its execution to understand his legal rights, and for that reason the burden rests on the person seeking to set aside the deed to show lack of mental capacity of the grantor at the time the deed was made. *Jackson v. Henninger*, 482 S.W.2d 323 (Tex.Civ.App., Austin 1972, no writ). If "a grantor is mentally capable of understanding the details of a conveyance of his property and the consequences resulting therefrom, he has mental capacity to make a deed." 4 Texas Practice, Lange: Land Titles, sec. 582, at 549 (1961); *Pollard v. El Paso National Bank*, 343 S.W.2d 909, 913 (Tex.Civ.App., El Paso 1961, writ ref. n. r. e.); *Jackson v. Henninger, supra.*

In seeking to set aside the deed, appellee offered the testimony of about a dozen witnesses, who testified to visits with Ollie Bradshaw during her lifetime and the things they observed relative to Mrs. Bradshaw at the time. The testimony of six witnesses related to visits with Ollie Bradshaw from eleven to nineteen years after the making of the deed.

Ollie Bradshaw made the deed in 1952, and a little more than ten years later she made a will which, insofar as disposition of her property was concerned, achieved the same end as the deed; that is, to place title in her son, to the exclusion of her daughter. Mrs. Bradshaw died in August of 1971, nine years after making her will.

Three witnesses told of visits with Ollie Bradshaw at her home in 1971, nineteen years after the deed was executed and a short time before Mrs. Bradshaw died at the age of nearly 84 years. These witnesses described a woman advanced in years who was nearly blind, unable to recognize immediately people she had known, and was dirty, with swollen feet, long toenails, sores on her face, living in a house that was unkempt and dirty, and with an old bathtub full of soiled clothes. Yet when one of the witnesses asked Ollie Bradshaw how to reach a mobile home where her son lived, Mrs. Bradshaw gave detailed and accurate directions by which the witness later found the house. The witness testified Ollie Bradshaw did not recognize her, yet admitted under cross examination that she had

lost 20 to 25 pounds in weight since the last time Mrs. Bradshaw saw her.

In the course of one visit in 1971 a witness told how Ollie Bradshaw's daughter repeatedly asked her mother why she had sued her daughter (subsequent to the Neusch option to buy 50 acres). Mrs. Bradshaw, seemingly reluctant to talk in the presence of persons not in the family, replied finally that the suit had been filed by her son and her lawyer. Mrs. Bradshaw also denied she had sold 50 acres of land, when questioned by her daughter, which was literally true, since the transaction was an option to sell, followed by a suit to clear the title of interferences from her daughter and other persons.

Another witness testified to occasions, some eleven years after the deed was made in 1952, that Ollie Bradshaw gave her hen eggs which were not fresh, and the witness expressed the view that Mrs. Bradshaw "wasn't the smartest person." In addition to being removed by a substantial number of years from the date of the deed, the incidents related may be regarded as trivial and without value respecting Ollie Bradshaw's mental capacity to make a deed in 1952.

Two witnesses testified concerning an incident at the Bradshaw home in January of 1952, several months before the deed was made. Two or three women, including Mrs. Bradshaw's daughter, went to the home and found it locked. Ollie Bradshaw was in the house, and when asked what she was doing, Mrs. Bradshaw replied she was feeding the chickens. One witness testified, ". . . I don't know how we got in the house, but some way we got the door unlocked, or window, or something . . . and she was feeding her chickens . . . she didn't want us there at all."

On this occasion Ollie Bradshaw was in bed fully clothed, with shoes on, and was feeding her chickens. It is not clear whether the witnesses meant Mrs. Bradshaw was throwing feed out a window to chickens, or had small chickens in the house feeding them. In sum, one of the witnesses stated, "She was very unstable." In 1952 Ollie Bradshaw was 64 years old and on the occasion of the visit in January related by the witnesses she was ill. No testimony was drawn from these witnesses as to Ollie Bradshaw's capacity to understand the details of the later transaction by which she deeded her property to her son. The testimony given describes an elderly ranch woman, lying in bed in January with her clothes on, feeding some chickens.

 This conduct may be unconventional, even eccentric, and, to some, bizarre, but without more, related directly to business understanding and acumen, it has no probative value to show want of mental capacity to make a deed. Even a gratuitous statement that she was "unstable" or that her "mental capacity was not there" can have no more probative value than the factual basis upon which the opinion must rest. Such an opinion is without probative value as it involves a legal definition and a legal test. *Carr v. Radkey,* 393 S.W.2d 806, 810 (Tex.Sup.1965).

There was some testimony about changes observed in Ollie Bradshaw sometime after she and her husband were involved in an automobile accident occurring sometime prior to the making of the deed. One said she did not seem to be the same when observed, and another stated she did not seem to want to talk. Mrs. Bradshaw suffered a dislocated jaw in the accident, and this injury, coupled with ordinary trauma resulting from an accident, offers a plausible reason for her not seeming the same and not wanting to talk. No effort was made to relate the conduct observed with ability to understand business or the consequences of conveying property to her son. The facts related do not demonstrate that conditions which might be termed unusual, eccentric, or extraordinary had some probability of being the same conditions which obtained at the time Ollie Bradshaw made the deed. The purported defects observed, singly or as a whole, at most were so trivial

and superficial as to be without bearing on basic mental capacity.

We have not undertaken to make a complete summary of the testimony of all the witnesses. We have examined the record with care and reviewed all the testimony offered through the contestant's witnesses. No witness for appellee testified to the effect that the witness formed an opinion as to the mental condition of Ollie Bradshaw on July 30, 1952; that the witness was of the opinion Mrs. Bradshaw on that date was of unsound mind; or that on that date she did not have sufficient mental capacity to understand the nature of the business or transaction in which she was engaged. The testimony of expert witnesses was not offered.

 It is not a function of the courts or the juries to go further than to determine whether the mental capacity of the maker of a deed measures up to the standard set by the law. Even though the grantor may be aged, infirm, eccentric, and cantankerous, have sores and be personally unkempt, keep a dirty house with feed or clothing piled in the bathtub, lie in bed with her clothes and shoes on, and allow her toenails to grow to great length, nevertheless such person has the right to dispose of her property in any manner she may desire if her mental capacity meets the law's test. The proper inquiry is the condition of the grantor's mind on the day the deed was executed and not whether she was unstable, not the smartest person, or even of unsound mind at another time prior to or after the making of the deed.

The contestant has failed to discharge the burden to show that Ollie Bradshaw, on July 30, 1952, did not have the mental capacity to make the deed she and her husband that day executed conveying their property to L. P. Bradshaw.

In sustaining appellant's points of error one and two, it becomes unnecessary for us to discuss or dispose of the remaining points and the issues presented under them. We hold that under the record there is no evidence of probative force that Oscar Bradshaw acted by reason of undue influence, or that Ollie Bradshaw was without mental capacity, when they executed the deed on July 30, 1952, to L. P. Bradshaw.

The judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing.

Reversed and rendered.