# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-06-00220-CV

**Clarence Davis, Appellant**

**v.**

**Mary Ellen Davis, Appellee**

FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
NO. 14,237, HONORABLE DONALD V. HAMMOND, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Clarence Davis appeals a final decree of divorce. The case was tried to the court without a jury. After hearing the evidence, the trial court entered judgment granting the divorce and dividing the marital estate in the manner requested by appellee Mary Ellen Davis. At the request of Clarence Davis, the trial court also entered findings of fact and conclusions of law supporting the final decree. These findings and conclusions also favored Mary Ellen Davis. Clarence Davis asserts error on two grounds: (1) the trial court erred in setting aside a "Gift Deed" signed by Mary Ellen Davis in August 2002 conveying her one-half community interest in the couple's homestead to Clarence; and (2) the trial court abused its discretion by failing to divide the marital estate in a manner that is just and right. We affirm.

Clarence and Mary Ellen Davis were married on January 8, 1947. They have three adult children. In 2002, Mary Ellen filed for divorce and left the homestead, taking $74,000 in cash

out of the couple's joint bank accounts. Within a few months, Mary Ellen decided to return to the homestead and reconcile with Clarence. Mary Ellen testified that, at that time, she had serious health problems, and had received a diagnosis that she likely had ovarian cancer. She said that she "felt like she was going to die." Both Clarence and Mary Ellen testified that as a condition of reconciling and allowing her to return to the homestead, Clarence required Mary Ellen to sign a "Gift Deed" conveying her community interest in the homestead to Clarence and reserving a life estate for Mary Ellen. Mary Ellen also agreed to return $64,800 of the cash she had taken from their accounts. At trial, Clarence testified that, in exchange for the gift deed and reconciliation, he agreed to pay her living expenses and allow her "to keep her social security" checks. On August 7, 2002, Clarence and Mary Ellen went to the office of an attorney hired by Clarence to draft the gift deed. Mary Ellen testified that, although the attorney was away from his office, she signed the deed. Mary Ellen neither sought nor received counsel regarding her interest in the couple's homestead, nor did she have the gift deed explained to her by anyone other than Clarence. In September 2002, also at the request of Clarence, Mary Ellen signed a bill of sale transferring her interest in most of the couple's other community assets—including vehicles, livestock, and all cash holdings—to Clarence in exchange for the stated consideration of ten dollars.[1] Mary Ellen did not seek or obtain advice regarding the execution of the bill of sale.

Circumstances between the two deteriorated, and Mary Ellen filed for divorce again in September 2004. This time Clarence filed a counterpetition as well. After a bench trial, the trial

---

[1] The trial court also set aside the bill of sale as the product of undue influence. Clarence does not challenge this finding on appeal.

2

court set aside the August 2002 gift deed and September 2002 bill of sale finding that Clarence "exercised undue influence against and upon" Mary Ellen. The court then included the homestead and other property that had been the subject of the gift deed and bill of sale as part of the couple's community property and divided the marital estate. The court awarded Mary Ellen a vehicle valued at $1000, all amounts in one joint checking account totaling $313.97, and half of two other joint accounts totaling $30,797.34. The court awarded Clarence the balance of the community property including the couple's homestead and most of the personal property. Finding that the community estate had a cumulative value of $367,545.65—$250,000 of which was allocated to the homestead property—the court ordered Clarence to pay Mary Ellen $151,661 to equalize the division of the estate. The trial court also required Clarence to return to Mary Ellen separate property in the amount of $14,000 cash.

Clarence first contends that "[t]he trial court erred in finding that the deed from Appellee to the Appellant was a result of undue influence." He argues that there is factually insufficient evidence to support the trial court's finding that the gift deed of August 2002 was the result of undue influence.[2] A party seeking to set aside an otherwise valid deed on the ground of undue influence must prove: (1) the existence and exertion of an influence; (2) that operated to subvert or overpower the grantor's mind when the deed was executed; and (3) the grantor would not

---

[2] Appellant's brief does not state whether he challenges the factual or legal sufficiency of the evidence of undue influence. His stated challenge is simply to the sufficiency of the evidence to support the trial court's finding. However, he seeks a remand rather than a rendition of judgment. In light of this requested relief, we interpret his complaint as one regarding the factual sufficiency of the evidence. *See National Life and Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex. 1969). As a practical matter, our disposition of the factual sufficiency issue, by implication, suggests the result of a legal sufficiency point had it been raised by the briefing.

have executed the deed but for the influence. *Dulak v. Dulak*, 513 S.W.2d 205, 209 (Tex. 1974) (quoting *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963)) (actions to set aside testamentary grants in wills); *Bradshaw v. Naumann*, 528 S.W.2d 869, 871 (Tex. Civ. App.—Austin 1975, writ dism'd) (rules guiding determination of existence of undue influence apply substantially alike to wills, deeds, and other instruments). Undue influence may be established by circumstantial evidence as well as by direct testimony. *Rothermel*, 369 S.W.2d at 922.

Clarence challenges the factual sufficiency of the evidence to support the finding of undue influence. In reviewing the factual sufficiency of the evidence, we weigh and consider all the evidence in the record. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). When reviewing a finding on which appellant bore the burden of proof, we will review the record to see if some evidence supports the finding, then determine whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to render the finding clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We may not pass upon the witnesses' credibility or substitute our judgment for that of the trier of fact, even if we believe the evidence clearly supports a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

The record reflects that when Mary Ellen sought to reconcile with Clarence in 2002 and return to the couple's homestead she was suffering from severe health problems. She testified that she had a heart attack at age 42 in 1976, two multiple bypass surgeries, and in the previous two years before trial, a hysterectomy and an aortic aneurysm. Her health was deteriorating in 2002, and she had recently received a diagnosis of likely ovarian cancer. She believed she was dying. Her

4

summary was, "I was just sick and I just felt like if I was going to die I wanted to come home."

Mary Ellen also testified that Clarence was very controlling and that "his word was the gospel."

There was evidence that Clarence had a history of violence both with Mary Ellen and the couple's

children, and that Mary Ellen was afraid of him. He had threatened family members with firearms

and physically assaulted Mary Ellen on several occasions. It is undisputed that when Mary Ellen

sought to return to the homestead Clarence required her to sign the gift deed and bill of sale as a

condition of allowing her to return. Mary Ellen stated that she did not understand the documents or

try to before she signed them. Clarence's response is that Mary Ellen signed the gift deed and bill

of sale voluntarily in exchange for his agreement to reconcile and allow her to live in the homestead.[3]

He does not dispute, however, that the "agreements" were his condition of allowing her to return to

the homestead. This evidence does not overwhelm the countervailing evidence supporting the trial

court's finding of undue influence. There is sufficient evidence for the trial court to have found that

Mary Ellen was in a particularly vulnerable state when she sought to return and that Clarence

exploited Mary Ellen's illness, her ignorance of community property rights, her fear of him, and her

desire to be in her lifelong home at that time in order to obtain her signature on the conveyance

documents. We conclude that factually sufficient evidence supports the finding of undue influence

and that the finding is not manifestly unjust. We overrule the first point of error.

_____

[3] Clarence contends that the "Gift Deed" was not actually a gift. He takes the position that Mary Ellen's interest in the homestead was conveyed to him in exchange for his agreement to reconcile and continue the marriage. Therefore, he argues, the transfer of her real property interest to him was not purely gratuitous because he conveyed consideration to Mary Ellen in the form of agreeing to continue to be married to her. Clarence's characterization of the "Gift Deed" transaction, however, does not change the analysis with respect to undue influence in obtaining the deed.

In his second point of error, Clarence contends that the trial court abused its discretion by failing to order a just and right division of the community estate. *See* Tex. Fam. Code Ann. § 7.001 (West 1998). In making a just and right division of the estate, the trial judge has wide discretion in dividing the property. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). On appeal, there is a presumption that the trial court correctly exercised its discretion in dividing the property, and the burden rests upon appellant to show from the record that the division was so disproportionate as to be manifestly unfair. *Law v. Law*, 517 S.W.2d 379, 384 (Tex. Civ. App.—Austin 1974, writ dism'd) (citing *Hedtke v. Hedtke*, 248 S.W. 21 (Tex. 1923)). In reviewing the trial court's judgment for abuse of discretion, we examine whether the court acted in an unreasonable or arbitrary manner. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). The trial court, in performing its fact-finding duties, is the sole judge of the credibility of the witnesses and must make such determinations in order to make its decisions. *Raymond v. Rahme*, 78 S.W.3d 552, 556 (Tex. App.—Austin 2002, no pet.).

Clarence complains that key components of the marital estate, specifically the real property, were overvalued by the trial court and, therefore, Mary Ellen received a disproportionate allocation of assets because she was awarded cash rather than the real property. The court awarded the bulk of the tangible community property (both real and personal) to Clarence, and required Clarence to pay Mary Ellen $151,661.51 to equalize the division of the community estate in addition to reimbursing her $14,000 as her separate property. Clarence contends that the trial court's overvaluation of assets awarded to him caused the cash payments required of him to "equalize" their

6

shares of the community property to be too high. He complains specifically about the valuation of the homestead, two horses, proceeds of a livestock sale, and their bank accounts.

The most significant disparity in the parties' valuation of the community assets is their valuation of the real property. The property is roughly twenty acres of land on the edge of the southeast quadrant of Llano, Texas. It contains a house, guest house, barns, and other improvements. It is also platted with a grid of streets that have not been cleared or paved. Mary Ellen claims that the real property is worth $250,000 based on what she overheard Clarence tell a realtor he would take for the property. Clarence claims that it is worth $111,780 based, he testified, on the valuation by the appraisal district. He testified that one person made a tentative offer of $175,000, but did not follow through and buy the property. Neither party offered an appraisal of the market value of the property done by an expert. The record is, therefore, meager on this issue. Nonetheless, the trial court has great discretion in determining the weight to be given to a witness's testimony. *Raymond*, 78 S.W.3d at 555-56. We cannot reweigh the evidence. *Ellis*, 971 S.W.2d at 407. The trial court was faced with two proffered valuations, both allegedly coming from Clarence, and neither supported by customary expert valuation evidence. Under such circumstances, we cannot say that the court abused its discretion by accepting Mary Ellen's testimony over that of Clarence. Neither is conclusive and the trial court was within its discretion to weigh the credibility of the two.

The court's valuation of two horses—Grasshopper and an unnamed mare—is also supported on this record. Mary Ellen testified that Clarence said Grasshopper was worth $10,000. She testified that she had learned only in the previous week that Clarence had transferred the horse to their daughter, Kay. Mary Ellen also testified that she and Clarence had owned a registered mare

7

that was on the property when she left, though she did not know the mare's whereabouts at the time of trial. She testified that she had heard Clarence value the mare "somewhere in th[e] neighborhood" of $5500. Clarence denied valuing Grasshopper so highly and testified that he valued the horse at his purchase price of $1500. At trial, Clarence testified that he would have accepted a hypothetical $5000 offer for Grasshopper, but that he had given the horse to their daughter. Clarence admitted that he sold a mare for $750, put the money into his lockbox, and might have spent the $750 by the time of trial. Kay testified that she did not know what value to place on Grasshopper, that she had not heard her father do so, and that her mother was present more than a year before trial when her father gave the horse to Kay and her husband for services rendered. Although equivocal, this record does not require overturning the trial court's fact-finding on either valuation.

Clarence complains that the trial court twice counted the valuation of four calves he sold. He testified that he sold the calves for $2719 and either deposited the cash or kept it. He contends that the proceeds should be part of the division of the bank accounts rather than being assigned a separate value. Mary Ellen counters that there is no evidence that Clarence put the money into the bank. We find no abuse of discretion in the trial court assigning a value to the proceeds of the sale separate from the value assigned to the bank accounts.

Finally, Clarence complains that the bank accounts were assigned greater value than they contained at the time of trial. When Mary Ellen filed this divorce suit in September 2004, statements show that the couple had $25,276 at City National Bank and $53,501 at First State Bank—a total of $78,777. At the time of trial in June 2005, Clarence testified that they had $18,620.50 at City National and $10,031.55 at First State Bank—a total of $28,652.05. Clarence

8

testified that he had withdrawn at least $36,000 that he kept in a lockbox, to which he had possibly added the mare and calves sale money. He had spent some of that money. In its findings and conclusions supporting the decree, the court assigned values of $22,094.68 to the City National account and $39,500 to the First State account—a total of $61,594.68. There is no amount expressly attributed to the cash in Clarence's lockbox. The difference between the statement values of the accounts on the trial date and the values assigned to the accounts by the trial court is $32,942.63, which is less than the amount Clarence admitted to having removed from the accounts and hidden in the lockbox. These figures indicate that the trial court included in the account figures amounts that Clarence removed from the accounts. To the extent the trial court departed from the evidence of the parties' cash assets, it did so in a manner that favored Clarence. The court's assessment of the valuation of the accounts is not against the great weight and preponderance of the evidence in the record of their cash holdings.

We conclude that the trial court's division of the community estate is not unreasonable or arbitrary. We overrule Clarence's second point of error.

We affirm the judgment of the trial court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Puryear and Waldrop

Affirmed

Filed: February 15, 2007