**Opinion filed August 25, 2011**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00307-CV

_____

## MARGARET McDANIEL, Appellant

## V.

## DEBRA HOUSEHOLDER, Appellee

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 46368-A**

## M E M O R A N D U M   O P I N I O N

This case arises out of an interpleader action filed by Globe Life and Accident Insurance Company concerning a life insurance policy purchased by Michael McDaniel. Michael died on September 9, 2008. Approximately eight months prior to his death, Michael changed the beneficiary of the life insurance policy from his wife, Margaret McDaniel, to his sister, Debra Householder. After Michael's death, Margaret asserted that the change of beneficiary was ineffectual because Michael lacked mental capacity to make the change or because Debra

exercised undue influence over him.  Thus, Margaret asserted that she is the proper beneficiary of the life insurance policy.

As a result of the dispute between Margaret and Debra, Globe Life interpleaded the death benefits of the life insurance policy into the registry of the court.[1]  Margaret and Debra filed cross-actions against each other for the death benefits.  Debra subsequently filed a no-evidence motion for summary judgment challenging Margaret's claims that Michael lacked mental capacity or was unduly influenced when he executed the change-of-beneficiary designation. The trial court granted Debra's no-evidence motion for summary judgment.  Margaret challenges the summary judgment in a single issue.  We affirm.

### Standard of Review

We review the trial court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).   When a no-evidence motion for summary judgment is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion.  *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).  A trial court must grant a proper no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged elements of the claim.  TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).   We review a no-evidence summary judgment under the same standard as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).   We review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not.  *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

### Analysis

Lack of mental incapacity and undue influence are two separate and distinct grounds for avoiding an instrument or contract.  *See Long v. Long*, 125 S.W.2d 1034, 1036 (Tex. 1939). "[I]ncapacity implies the lack of intelligent mental power; while undue influence implies within itself the existence of a mind of sufficient mental capacity to make [an instrument] if not

---

[1]Globe Life is not a party to this appeal.

2

hindered by the dominant or overriding influence of another in such a way as to make the instrument speak the will of the person exercising undue influence" and not that of the maker of the instrument. *Id.* Accordingly, undue influence assumes the existence of testamentary capacity. *Id.*

"[M]ental capacity" means that, at the time of the execution of an instrument or contract, the maker must have had sufficient mind and memory to understand the nature and effect of his act. *Decker v. Decker*, 192 S.W.3d 648, 652 (Tex. App.—Fort Worth 2006, no pet.). The law presumes that a person executing a contract or instrument had sufficient mental capacity at the time of its execution to understand his legal rights. *Bradshaw v. Naumann*, 528 S.W.2d 869, 873 (Tex. Civ. App.—Austin 1975, writ dism'd); *see Hall v. Hall*, 352 S.W.2d 765, 767 (Tex. Civ. App.—Houston 1962, no writ) (mental capacity to contract must be determined as of contract execution date). Accordingly, the burden rests on the person seeking to set aside a contract or instrument to show lack of mental capacity of the contracting party at the time the contract or instrument was made. *Bradshaw*, 528 S.W.2d at 873.

To demonstrate a contracting party's mental capacity at the time of the contract's execution, evidence of his mental capacity prior, and subsequent, to the time of the conveyance is admissible. *See Decker*, 192 S.W.3d at 652. However, the proper inquiry remains the condition of the contracting party's mind on the day the contract or instrument was executed, and any evidence from before or after the date of execution must be near enough in time to be probative of the contracting party's mental capacity on the execution date. *See Turner v. Hendon*, 269 S.W.3d 243, 252 (Tex. App.—El Paso 2008, pet. denied); *Dubree v. Blackwell*, 67 S.W.3d 286, 290 (Tex. App.—Amarillo 2001, no pet.). While circumstantial evidence may be offered to raise an issue of material fact, such evidence must transcend mere suspicion. *Ford Motor*, 135 S.W.3d 598, 601. Evidence that is so slight as to make any inference a guess is, in legal effect, no evidence. *Id.*

Margaret submitted three affidavits as summary judgment evidence. In her own affidavit, Margaret made the following assertions pertaining to Michael's mental capacity:

> During the later part of January and the first part of February[2] I visited with my husband two to three times a week at the Ezell Key Feed and Grain Store. He and I would have conversations concerning his health as well as general discussions. During this period of time Michael would not answer questions directly and

---

[2]The beneficiary designation change form was executed on January 24, 2008.

would stare into space and then respond. At times he was very slow in his cognizant thinking and responding to discussions. At this time he was on a prescription medication known as Dilaudidin as well as a substitute for Dilaudidin, Hydromorpon. He had advised me that this medication was causing sickness and extreme drowsiness which was difficult for him to be awake. While he was under this medication I feel that he did not have the energy or the cognizant thinking to ascertain the business of his life to be able to respond or contest any request made of him.

Another affidavit was executed by Denys Coates, a pharmacist. Coates averred that a person taking the drug Hydromorphone "would and could possibly suffer" mental clouding and mental impairment. Coates conditioned her affidavit on the following assumption: "[a]ssuming that the patient took this medication." The third affidavit was executed by a family friend, Ann Sanders. She stated that Michael was in a great deal of pain and that he would take a lot of medication with alcohol. She further stated that often he was not able to work on a building project because of physical problems. Finally, she stated that she "did not believe that he was cognizant of his affairs the later part of January 2008 or was able to comprehend business affairs or have knowledge of documents of what he may have signed."

We conclude that the summary judgment evidence does not rise above mere suspicion regarding a lack of mental capacity on the part of Michael at the time the change of beneficiary occurred. The evidence pertaining to the effect of medication he may have been taking is simply too speculative. There is no evidence that he was taking it at the time he executed the beneficiary form. Furthermore, Margaret's affidavit is inconclusive because it describes alleged deficiencies "at times" with Michael's mental capacity. Sanders's affidavit is also inconclusive in nature because it describes periods when Michael was allegedly suffering from physical impairments but yet was still able to work some on a barn project. In sum, the summary judgment evidence does nothing more than create a mere suspicion that Michael lacked mental capacity on the day that he executed the beneficiary form.

In the absence of evidence pertaining to a lack of mental capacity on the part of Michael, we direct our attention to the undue influence contention. A party wanting to set aside a document on the basis of undue influence must prove (1) the exertion of an influence, (2) that operated to subvert or overpower the person's mind when executing the document, and (3) that the person would not have executed the document but for the influence. *In re Estate of Woods*, 542 S.W.2d 845, 847 (Tex. 1976); *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). The

4

elements of undue influence may be proved by circumstantial, as well as direct, evidence. *Rothermel*, 369 S.W.2d at 922. "[An] exertion of undue influence cannot be inferred by opportunity alone." *Cotten v. Cotten*, 169 S.W.3d 824, 827 (Tex. App.—Dallas 2005, pet. denied). There must be some evidence to show that the influence was not only present, but in fact exerted, with respect to the making of the instrument. "The circumstances relied on as establishing the elements of undue influence must be of a reasonably satisfactory and convincing character, and they must not be equally consistent with the absence of the exercise of such influence." *In re Estate of Steed*, 152 S.W.3d 797, 810 (Tex. App.—Texarkana 2004, pet. denied).

Margaret addressed undue influence in her affidavit in the following respects:

> It is my opinion that his will power was so lacking that while he was under such drugs as well as the pain he was enduring with his cancer that he was easily influenced in signing any change of beneficiary. I further feel that he did not have the desire, knowledge or where with all to even request a beneficiary form from the insurance company. It is my opinion that this form was obtained by Debra Householder and was presented to him for him to sign.

Sanders also addressed undue influence in her affidavit by stating that Michael told her how much he loved Margaret and said that he did not look forward to going to Debra's house because she was controlling.

As was the case with the evidence pertaining to Michael's mental capacity, the summary judgment evidence does not rise beyond a mere suspicion regarding the undue influence allegation. There is no evidence pertaining to the circumstances surrounding the actual execution of the beneficiary designation form or the role, if any, that Debra played in its execution. We conclude that the trial court did not err in granting Debra's no-evidence motion for summary judgment. Margaret's sole issue on appeal is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

August 25, 2011                                                    JUSTICE

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

5