

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-25-00026-CV

IN RE THE GUARDIANSHIP OF CALLIE LAVON VANBUSKIRK,
AN ALLEGED INCAPACITATED PERSON

On Appeal from the County Court
Red River County, Texas
Trial Court No. G23-00098

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

Appellants, Arron Parker VanBuskirk (Parker) and Makenzie VanBuskirk (Makenzie), challenge the trial court's final judgment declaring a February 12, 2024, deed (the Deed) invalid due to the lack of mental capacity of Callie Lavon VanBuskirk (Callie). Appellants argue that the probate court improperly applied Texas law by declaring the Deed invalid and erred in awarding $37,267.38 in attorney fees and costs. Because we find that there was sufficient evidence to support the trial court's determination that Callie was incapacitated at the time she signed the Deed and that attorney fees and costs were properly awarded, we affirm the trial court's judgment.

## I. Background

Callie is Parker's mother, and Makenzie is Parker's daughter and Callie's granddaughter. On February 12, 2024, Callie signed the Deed granting her homestead to Makenzie. Callie was declared incapacitated by the probate court on March 28, 2024, and Appellee, Shannon Delite Leake, who is also Callie's daughter, was appointed as guardian of the person of Callie. After Callie passed on October 20, 2024, Makenzie deeded half of the homestead to Parker. Shannon, as guardian of the person and estate of Callie, then filed an original petition for rescission of voidable deed and sought a declaratory judgment ruling that the Deed was void due to Callie lacking the mental capacity required to sign the Deed.

The probate court held a hearing to determine the validity of the Deed. Dr. R. Scott Staton testified that, pursuant to the probate court's order, he examined Callie to assess her mental capacity. Staton met with Callie on February 5 and March 6, 2024. In a February 7,

2

2024, preliminary letter, Staton indicated that Callie "scored a 19 out of 30" on the Montreal Cognitive Assessment and that "anything below 22 would be considered some form of dementia." According to Staton, the score indicated "mild" to "moderate dementia," which is "suggestive of cognitive impairment." Staton stated he had yet to speak with all parties he intended to, but he was able to determine that Callie had "residual cognitive impairment" as a result of a prior stroke, which "arose to a level of major neurocognitive disorder." As it related to decision making, Staton testified that Callie could express her feelings and contribute to conversations but that "her capacity of actually making the decision wouldn't be sufficient." He found her, based on his expert medical opinion, to be "susceptible to influence." While he agreed it was possible that Callie may appear to have her cognitive function to operate normally, Staton stated that Callie "had some difficulty with executive function" and "would get confused" even though she could communicate effectively. The February 7 letter states that Callie "lack[ed] capacity to make major decisions involving her residence, finances, [and] health."

On March 7, 2024, after evaluating Callie again on March 6, 2024, via FaceTime, Staton submitted an evaluation of Callie's mental functioning in which he stated Callie had "[m]ajor neurocognitive disorder due to vascular disease, with paranoia, history of CVA, which is cerebral vascular accident which is commonly referred to as a stroke." Staton described the severity as "mild to moderate" and explained that "major neurocognitive disorder" is the "new term" for "dementia." Staton testified that there was no "expected improvement," rather that Callie had been "progressively worsening." Staton found Callie's incapacitation level to be "total incapacitation." Staton's expert opinion was that Callie would not have been able to make

3

rational decisions regarding her property or her finances and that she lacked the ability to understand the nature and extent of the Deed she signed on February 12, 2024.

On cross-examination, Staton agreed that there was another evaluation performed by Dr. Jean Woel LaTortue, but Staton believed that LaTortue's score of "23 out of 30" was erroneous. Staton explained that Callie had difficulty navigating herself in his office, that she had to be assisted to find her way, and that she had difficulty using the restroom by herself. He explained that during the February 5 appointment, Callie became mentally fatigued, and he determined it would be best to halt the evaluation until March 6.

Shannon testified that Callie lived with Parker from December 2023 until March 2024, until she moved in with Shannon in March 2024. Shannon did not believe Callie was of sound mind to make decisions and stated that Callie "need[ed] assistance with daily activities." Shannon stated that Callie's mental health did not improve from March 2024 until October 2024, when Callie passed. As it related to the Deed in question, Shannon's testimony was that Callie had to be reminded that she signed the Deed, and Callie indicated that she was "tricked" into signing it. Shannon stated that she had never heard Callie indicate a desire to give her home to Makenzie. On cross-examination, Shannon denied that she wanted Callie to sign the land over to one of her children, but admitted she was upset with Parker for having Callie sign the Deed.

Tracy (Chassidy) Chandler, the Red River County Clerk, testified that when Callie came to the clerk's office, she had a hard time communicating with her, "so Parker just took over and told [the clerk's office] what they were trying to do." Chandler agreed that Callie appeared "confused or disoriented" and did not seem to "know where she was." Chandler stated that

4

Parker explained they were there to change the name on Callie's property, but the clerk informed Parker that the office could not just change a name, but rather, a deed needed to be filed.

Tanner Davis, Parker's son, testified that he did not believe Callie would have left her property to Makenzie. Amouree and Jesse Kimball, Shannon's children, also testified that they did not believe Callie would have been capable of handling her financial affairs as of February or March 2024.

As it related to the drafting and signing of the Deed, Parker testified that she took Callie to Red River County Abstract, where Callie waited in the vehicle while Parker went in to explain what they needed done, specifically "that [her] mom wanted to put the deed over into [Makenzie's] name." Parker explained that Callie was in a wheelchair and did not want to get out of the vehicle until it was necessary. Callie did not have any communication with the title company until it was time to sign the Deed, which she did from the vehicle. When Callie signed the Deed, she was the one who spoke with the title agent.

Parker stated that she did not believe Callie was incapacitated when she signed the Deed, and Callie did so to avoid her home being sold, because she wanted it to stay in the family after she passed. Parker testified that after Callie informed her that she wanted to sign her home over to Makenzie, Parker suggested that Callie get a psychological evaluation performed because family members had been questioning her mental capacity and Parker wanted to avoid conflict.

The trial court also heard testimony from Makenzie, Makenzie's fiancé, and a friend of Callie's who also did work around Callie's home. At the close of evidence, both sides presented

5

their closing arguments, and the trial court took a brief recess to review the evidence, after which the trial court ruled:

> With respect to the general warranty deed dated February 12, 2024, the [c]ourt finds that Callie Lavon Vanbuskirk did not have capacity to sign that deed based on the evidence the [c]ourt has reviewed so the deed is going to be rescinded by the [c]ourt and declared to be void which would make the second deed dated October 22, 2024[,] also void.

## II. Sufficient Evidence Supported the Trial Court's finding that Callie Lacked Sufficient Mental Capacity to Sign the Deed

In their first issue on appeal, Parker and Makenzie argue that the trial court erred in its determination that Callie lacked sufficient mental capacity to sign the Deed, thereby invalidating the Deed. Under this issue, the appellants challenge the sufficiency of the evidence to support the trial court's finding.

### A. Standard of Review and Applicable Law

"We review declaratory judgments under the same standards as other judgments and look to the procedure used to resolve the issue in the trial court to determine the standard of review on appeal." *Donias v. Old Am. Cnty. Mut. Fire Ins. Co.*, 649 S.W.3d 789, 793 (Tex. App.—El Paso 2022, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.010; *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 196 (Tex. App.—Dallas 2013, pet. denied)). When reviewing for legal sufficiency, we "consider [the] evidence in the light most favorable to the" finding and indulge every reasonable inference that supports the challenged finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We "credit favorable evidence" if a reasonable factfinder could "and disregard contrary evidence unless [a] reasonable" factfinder could not. *Id.* at 827. When reviewing for factual sufficiency, we "consider and weigh all of the

6

evidence," both supporting and contradicting the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

"When, as here, the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of 'no evidence to support the finding.'" *Turner v. Hendon*, 269 S.W.3d 243, 247 (Tex. App.—El Paso 2008, pet. denied) (quoting *Serrano v. Union Planters Bank, N.A.*, 162 S.W.3d 576, 579 (Tex. App.—El Paso 2004, pet. denied) (citing *In re Est. of Livingston*, 999 S.W.2d 874, 879 (Tex. App.—El Paso 1999, no pet.))).

> An appellate court will sustain a legal-insufficiency or 'no-evidence' challenge, if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact.

*Id.* (quoting *City of Keller*, 168 S.W.3d at 810). Our sister court also stated,

> "The law presumes that the grantor of a deed had sufficient mental capacity at the time of its execution to understand his legal rights, and for that reason the burden rests on the person seeking to set aside the deed to show lack of mental capacity of the grantor at the time the deed was made." *Bradshaw v. Naumann*, 528 S.W.2d 869, 873 (Tex. Civ. App.—Austin 1975, writ dism'd); [(citing] *Jackson v. Henninger*, 482 S.W.2d 323 (Tex. Civ. App.—Austin 1972, no writ)[)]. Absent proof and determination of mental incapacity, a person who executes a document is presumed to have read and understood it. *Dubree v. Blackwell*, 67 S.W.3d 286, 289 (Tex. App.—Amarillo 2001, no pet.). "Mental capacity" means that, at the time of the execution of the deed, the grantor must have had sufficient mind and memory to understand the nature and effect of h[er] act. *Decker v. Decker*, 192 S.W.3d 648, 652 (Tex. App.—Fort Worth 2006, no pet.). If the grantor is mentally capable of understanding the details of the conveyance and the consequences resulting from it, [s]he has mental capacity to make a deed. *Bradshaw*, 528 S.W.2d at 873. Elderly persons are not presumed to be incompetent. *Dubree*, 67 S.W.3d at 289. To demonstrate a grantor's mental capacity at the time of the conveyance, evidence of h[er] mental capacity prior, and subsequent, to the time of the conveyance is admissible. *Decker*, 192 S.W.3d at 652; *Jackson*, 482 S.W.2d at 325; *Pollard v. El Paso Nat'l Bank*, 343 S.W.2d 909, 913–14 (Tex. Civ. App.—El Paso 1961, writ ref'd n.r.e.).

*Turner*, 269 S.W.3d at 247–48.

### B.     Analysis

Parker and Makenzie testified that Callie was coherent and able to make her own decisions and did so when signing the Deed.  In their appellate argument, they argue that there was no evidence of coercion and that Callie signed the Deed herself.  Parker and Makenzie also argue that the only evidence of mental incapacity came from Staton, which they argue did not meet the "low threshold" that Callie "understand her actions."  We disagree.

Staton's testimony and reports were presented to the trial court, in which Staton explained that after two evaluations, the first of which was approximately one week before Callie signed the Deed and the second was a few weeks after the Deed was signed, he found Callie to be "incapacitated **according to the legal definition in [S]ection 1002.017 of the Texas Estates Code**."  His testified that, while Callie was able to express her preferences, he did not believe she had the capacity to make financial decisions on her own, nor did she have the mental capacity to understand those decisions.  Staton found "[m]ild" to "[m]oderate" "Major Neurocognitive Disorder" as a result of a stroke.  Staton's expert medical opinion as of March 7, 2024, three weeks after the Deed was signed, was that Callie did not have the ability to make responsible decisions, including "complex business, managerial, and financial decisions."

While Parker and Makenzie presented character witnesses who attested to Callie's abilities, the trial court, as fact-finder, is the sole judge of "the credibility of the witnesses and the weight to [be] give[n] their testimony."  *City of Keller*, 168 S.W.3d at 819 (stating trial court, as sole fact-finder in bench trial, is sole judge of the credibility of witnesses, weight to be given

their testimony, and may accept or reject all or any part of their testimony). The witnesses presented by Parker and Makenzie also testified that Callie needed assistance in her day-to-day activities, though they asserted that Callie was mentally capable of making decisions. Parker and Makenzie did not disagree that Callie should not be left alone for extended periods.

Furthermore, the trial court had previously determined in March 2024, that Callie was incapacitated and required guardianship. Having previously made that determination, hearing the testimony in the case at bar, and taking judicial notice of the record before it, the trial court had before it sufficient evidence to determine that Callie lacked sufficient mental capacity at the time she signed the February 12 Deed. We overrule Parker and Makenzie's first issue.

## III.    The Trial Court Properly Awarded Attorney Fees

By their second issue, Parker and Makenzie assert that the trial court erred in awarding attorney fees and costs, specifically arguing that the "plaintiff's petition for rescission of a voidable deed was technically part of a guardianship action." The trial court, however, awarded attorney fees and costs under the declaratory judgment act. As a result, we determine whether the award of fees was permitted under the declaratory judgment act.

### A.    Standard of Review

A trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just" in a declaratory judgment proceeding. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. "The grant or denial of attorneys' fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing of abuse of discretion." *Anderton v. City of Cedar Hill*, 447 S.W.3d 84, 98 (Tex.

App.—Dallas 2014, pet. denied) (citing *Hartsell v. Town of Talty*, 130 S.W.3d 325, 329 (Tex. App.—Dallas 2004, pet. denied)). "Thus, in exercising its discretion in a declaratory-judgment action, a trial court may award attorney's fees to the prevailing party, may decline to award attorney's fees to either party, or may award attorney's fees to the nonprevailing party, regardless of which party sought declaratory relief." *Castille v. Serv. Datsun, Inc.*, No. 01-16-00082-CV, 2017 WL 3910918, at *11 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet.) (mem op.) (citing *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 313–14 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 323–24 (Tex. App.—Dallas 2004, no pet.)).

**B.      Analysis**

Here, the trial court awarded fees to the prevailing party in the amount of $37,267.38, plus interest, an amount testified to by Shannon's counsel during the trial. There was no direct objection to the prove up of attorney fees; rather, Parker argued that no fees would have accrued "if [Shannon] would've just talked to [Parker] like [Parker] begged her to do over text messages." Parker also questioned the amount of the fees when she stated, "Like $30,000 for sending emails and filing things?" However, Shannon's counsel responded by explaining in detail the depth of the legal work required to prepare the case and try it to the bench. Where the trial court heard and received testimony and evidence of counsel's hours and fees, it did not abuse its discretion in awarding such fees to the prevailing party in a declaratory judgment action. We overrule Parker and Makenzie's second issue.

10

## IV.     Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     September 2, 2025
Date Decided:      October 27, 2025