Juanita JACKSON, Appellant,

v.

Henry HENNINGER, Guardian of Rudy and Pearl Henninger, Appellee.

No. 11931.

Court of Civil Appeals of Texas, Austin.

June 28, 1972.

**324**

Harriet Samon Owen, Austin, for appellant.

Alvis Vandygriff, Joe D. Milner, Jr., Austin, for appellee.

SHANNON, Justice.

This appeal concerns a suit in the District Court of Travis County to set aside deeds to a 36.7 acre homestead upon the basis that the grantors lacked mental capacity to convey the land. Upon trial to the court, judgment was entered setting aside those deeds. We will affirm that judgment.

A factual resume follows. On April 3, 1969, and for some years previous, Rudy Henninger and his wife, Pearl, were owners of the 36.7 acre tract situated in Travis County. By that date the Henningers were over sixty-five years of age and, because of ill health, were living in the Monte Siesta Retirement Home. On April 3, 1969, the Henningers signed separate warranty deeds conveying that land to their niece, and appellant here, Juanita Jackson, reserving for themselves a life estate. On the same date the Henningers executed separate powers of attorney in favor of appellant in which appellant was empowered, among other things, to convey away their remaining interest in land.

Four days later the Henningers revoked the powers of attorney previously granted appellant. Their attorney, on April 14, 1969, wrote appellant requesting that she reconvey the tract to the Henningers. On May 9, the Henningers filed suit to set aside the deeds, alleging, in effect, that the deeds had been obtained as the result of appellant's undue influence.

The case proceeded to trial on October 13, 1969, and after hearing the testimony of three witnesses, including Pearl Henninger, the trial judge recessed the case on his own motion suggesting that a guardian ad litem be appointed for Mrs. Henninger. Sometime later Henry Henninger, a nephew, and appellee here, was appointed guardian of the person and estate of the Henningers by the Probate Court of Travis County, and was substituted over the objection of appellant as the plaintiff in this suit.

The trial was resumed on October 26, 1971, and in appellee's trial petition he alleged that the deeds from the Henningers to appellant resulted from the exercise of undue influence by appellant and, alternatively, that the Henningers lacked the mental capacity to execute the deeds.

Pursuant to appellant's request, the court filed findings of fact and conclusions of law and found, among other things, that at the time of the execution of the deeds to appellant, Rudy and Pearl Henninger were of unsound mind and did not have sufficient mental capacity to execute the deeds in that they did not have sufficient mind and memory to understand the nature and effect of their act.

By multiple points of error, appellant makes the basic contention that the findings that Rudy and Pearl Henninger were of unsound mind at the time of the execution of the deeds was supported by no evidence, or alternatively, that the evidence was insufficient.

 Since the law presumes that the grantor of a deed has sufficient mental capacity at the time of its execution to understand his legal rights, the burden of proof rests on those seeking to set aside the deed to show lack of mental capacity of the grantor at the time of the execution of

the deed. Smith v. Thornhill, 25 S.W.2d 597 (Tex.Comm.App.1930), rev'd on other grounds on rehearing, 34 S.W.2d 803 (Tex.Comm.App.1931). The term "mental capacity" means that the grantor at the time of the execution of the deed must have had sufficient mind and memory to understand the nature and effect of his act. Smith v. Thornhill, *supra,* see Baylor University: John M. Sanders, Deed of Insane Grantor, 11 Baylor L.Rev. 436 (1959). To demonstrate the state of the grantor's mental capacity at the time of the conveyance, evidence of his mental capacity prior and subsequent to the time of the conveyance is admissible. Cole v. Waite, 151 Tex. 175, 246 S.W.2d 849 (Tex.1952).

Appellee produced four witnesses to discharge his burden of showing that because of the infirmities of their age and illnesses neither Rudy nor Pearl Henninger had the requisite mental capacity to execute the deeds. Those witnesses were Dr. Henry Marvin Dittert, Jr., the Henninger's treating physician, and Mrs. Sammie M. Black, Peggie Louise Woodward, and Ceola Redeaux, all nurses at the Monte Siesta Retirement Home in April of 1969.

According to Dr. Dittert, Pearl Henninger had suffered from diabetes for a number of years before 1969, and was on January 8, 1969, a "brittle" diabetic. Her diabetic condition was such that she, on occasion, suffered from hypoglycemic shock which, together with arteriosclerosis, caused brain damage. At times Mrs. Henninger was reduced to a near comatose condition from the effect of the diabetes or from the effect of the treatment of that condition. Dr. Dittert testified that while Mrs. Henninger might appear on first impression to be aware of her situation, a closer interrogation would reveal that she did not have a full understanding "of what was going on." Her memory of current happenings involving herself was bad, and Dr. Dittert noticed in January and February of 1969, episodes of confusion in which Mrs. Henninger was disoriented as to where she was, who she was, and what

was "going on." Dr. Dittert's opinion was that at no time when he saw Mrs. Henninger was she capable of making "responsible" decisions.

Nurses Woodward and Redeaux testified that with respect to the general period of time here concerned, Mrs. Henninger was confused and forgetful. Nurse Woodward was of the opinion that Mrs. Henninger's mind was "not completely" clear and that she never realized the condition of Mr. Henninger and herself. According to Mrs. Woodward, Mrs. Henninger's mind would be "fairly good" one day and not so on the next day. Nurse Redeaux testified with respect to April 3, 1969, Mrs. Henninger did not know the extent and nature of her property and that she did not know the natural objects of her bounty. It should be noted that the value of Nurse Redeaux's testimony was diminished when on cross-examination it was shown that she was somewhat less than familiar with the meaning of the term, the "natural objects of her bounty."

Dr. Dittert was called to treat Rudy Henninger for a "stroke" which left him paralyzed on the left side. Three days afterwards, on January 27, 1969, Mr. Henninger showed a marked mental deterioration. He was disoriented as to time, place, and person, and in Dr. Dittert's opinion he never improved. Dr. Dittert was of the opinion that Mr. Henninger had no memory of anything since the stroke on January 24, 1969. In Dr. Dittert's opinion Mr. Henninger would not know the nature of his acts, would not recognize a deed, and it would be doubtful that he would have known the extent of his property. Likewise, Dr. Dittert testified that Mr. Henninger was not capable of making "responsible" decisions at any time that he had seen him.

Nurses Black, Woodward, and Redeaux also testified with respect to Mr. Henninger's condition. Mrs. Black was of the belief that he did not know where he was. In her opinion he did not know the extent

of his property or its location, and that he did not know the nature of his acts or the objects of his bounty. Nurses Black, Woodward, and Redeaux did not think that he would recognize a deed. Mrs. Woodward testified that Mr. Henninger could not get up, feed himself, or tend to any of his bodily functions. In her opinion his mind had "never been clear" since she had known him. His mind wandered to such an extent that he could not carry on a conversation.

While paralyzed in bed in his room at Monte Siesta, Mr. Henninger often said that he was going out to milk the cows, clean out the well, tend to the flowers, plow the fields or feed the chickens. On one occasion when Dr. Dittert was called to treat a cut on his hand, Mr. Henninger invited him in to have ice cream, and urged that he be sure and take home some chrysanthemums. These utterances demonstrate that age and illness with their "stealing steps" [1] had removed his power to realize his situation or whereabouts.

Appellants sought to rebut appellee's evidence of the Henningers' mental capacity on April 3, 1969 by the testimony of several witnesses. In the main, appellant relied upon the testimony of Mrs. Edith Roberts, Miss Kathryn Adams, and Reverend Wayne E. Dickerson. Mrs. Roberts was the attorney who prepared the deeds and powers of attorney, and was present when the Henningers signed those instruments. She testified that she explained and read those instruments to the Henningers, and in her opinion, they understood the nature and effect of the deeds. Mrs. Roberts testified that she was satisfied that the Henningers knew the extent of their property. She also testified that during the time she was with the Henningers they did not appear confused or disoriented. Miss Adams is a neighbor and friend of the Hennin-

gers. Miss Adams visited the Henningers on April 3, 1969, and on that visit the Henningers recognized her, and she "could see nothing wrong with them."

Rev. Dickerson is the preacher at the Oak Hill Baptist Church. Although the Henningers did not go to church, he testified that he had known them about nine years and made calls on them before and after they went to Monte Siesta Retirement Home. After they were in Monte Siesta, he visited them about every month. Rev. Dickerson stated that Mrs. Henninger is the "same" now as she was when he first knew her nine years before. However, he did notice a deterioration in Mr. Henninger "six to eight months" after he was in Monte Siesta.

◼ From the preceding summary, it is apparent that there is ample evidence to support the finding of the trial court. In a non-jury trial wherein the court has filed findings of fact and a statement of facts has been filed, the court's findings will be sustained if there is any evidence to support them. 4 McDonald, Texas Civil Practice, Sec. 16.10(b), p. 29 (Rev.Vol. 1971).

◼ Appellant also complains that the court erred ". . . in considering the testimony of Pearl Henninger, and in allowing her testimony to be part of this record for any purpose . . ." On the first day of the trial, October 13, 1969, the trial court, after hearing the testimony and observing the demeanor of Pearl Henninger, recessed the case suggesting that a guardian ad litem be appointed. Appellant claims that the court "considered" the testimony of Mrs. Henninger in formulating his findings, and such was erroneous since "the testimony of an alleged incompetent is not admissible for any reason." Assuming, but not deciding, that appellant's premise is

---

1. "But age, with his stealing steps, Hath claw'd me in his clutch."

Shakespeare, Hamlet, Act V, sc. i. l. 97.

correct, it is presumed in a non-jury trial that the trial judge ignored incompetent evidence, and that he grounded his decision solely upon the matters properly before him. Victory v. State, 138 Tex. 285, 158 S.W.2d 760 (Tex.1942), 4 McDonald, Texas Civil Practice, Sec. 16.04, p. 5 (Rev. Vol.1971).

■ By point of error fourteen appellant claims that the court erred in permitting appellee to be substituted as party plaintiff for the Henningers. At the time the trial court permitted appellee to be substituted as plaintiff, appellee had been appointed guardian of the persons and estates of Rudy and Pearl Henninger by the Probate Court of Travis County. Appellant says that there existed such a ". . . great conflict of interest between the guardian and his ward (sic) as to amount to a conspiracy to set aside" the deeds.

If appellant had wished to prevent appellee's appointment as guardian, she should have challenged that appointment in the guardianship proceedings in the Probate Court. If appellant now wishes to attempt to remove appellee as guardian, she must file appropriate proceedings in the Probate Court. See Art. 222 of the Probate Code, V.A.T.S.

Appellant's final point is that the court erred in overruling her motion for summary judgment. In the early stages of the case, both the Henningers and the defendant filed motions for summary judgment, both of which were denied. In such a situation, the order denying the motion for summary judgment is not subject to review upon appeal. Ackermann v. Vordenbaum, 403 S.W.2d 362 (Tex.1966).

The judgment is affirmed.

Affirmed.