

# Court Of Appeals
## Fourth Court of Appeals District of Texas
### San Antonio

★ ★ ★     ★ ★ ★

## MEMORANDUM OPINION

No. 04-08-00886-CV

**IN RE GUARDIANSHIP OF MARTHA JANE VALDEZ,**
An Incapacitated Person

From Probate Court No. 2, Bexar County, Texas
Trial Court No. 2007-PC-2303
Honorable Tom Rickhoff, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:   July 15, 2009

AFFIRMED

This is an appeal from a judgment in a trespass to try title suit involving four tracts of real property. The dispute centers on the validity of Martha Jane Valdez's conveyance, by deed, of the four properties to one of her children, appellant Jerry Valdez. Jerry initially filed his trespass to try title suit against his mother and his sister, Dorothy Mello (the guardian of the person and estate of Martha Jane).[1] Mello, as guardian of her mother's estate, filed a counterclaim seeking title to and possession of the real property. Mello also asserted a claim for conversion against Jerry and his wife,

---

[1] Martha Jane Valdez was later dismissed as a named party. Martha Jane and her late husband had fourteen children, two of whom are Jerry Valdez and Dorothy Mello.

Mary Alice Valdez. The jury found in favor of Mello and the trial court signed a final judgment awarding Mello, as guardian, title to all real property and recovery of $8,474.54 against the Valdezes, jointly and severally, for conversion of Martha Jane's bank accounts. This appeal by the Valdezes (collectively, the "appellants") ensued. We affirm.

## JURY CHARGE

In their first issue, appellants raise numerous complaints regarding the jury charge. Appellants first complain the trial court erred by failing to ask the jury (1) if the gift deeds were valid, (2) whether Mello overcame the conclusive effect of the Certificate of Acknowledgment accompanying each deed, and (3) what liability was attributable to each appellant. In order to preserve error to an objection relating to the failure to submit an issue in the jury charge, a party must object, if the question is relied upon by the opposing party, or make a written request for submission in substantially correct wording. *Tx. Dept. of Human Serv. v. Hinds*, 904 S.W.2d 629, 637 (Tex. 1995); *Drilex Sys., Inc. v. Flores*, 961 S.W.2d 209, 213 (Tex. App.—San Antonio 1996), *aff'd as modified*, 1 S.W.3d 112 (Tex. 1999); TEX. R. CIV. P. 278 ("Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing . . . ."). Appellants did not submit a written request, in substantially correct wording, for specific jury questions on the validity of the deeds or the conclusive effect of the Certificate of Acknowledgment. Also, appellants did not object to the form of the question asking what sum of money would fairly and reasonably compensate Martha Jane for conversion of her money. Therefore, these complaints are not preserved for our review.

Appellants next complain the trial court erred by (1) submitting a question on fraudulent concealment "without defining fraud or fraudulent concealment and with total disregard that Jerry

had no duty to disclose the existence of the Warranty Deeds" and (2) submitting "an improper definition which said the mental illness was based on evidence submitted to the Court." Appellants also raise various complaints about jury questions two, three, four, five, and seven. Appellants did not raise any of these complaints below, therefore, nothing is preserved for our review on appeal. *See Hinds*, 904 S.W.2d at 637.

Appellants also contend the trial court submitted "jury questions that did not permit [them] to present their case on appeal." Appellants do not elaborate on this complaint, therefore, because appellants have inadequately briefed this issue, nothing is presented for our review. TEX. R. APP. P. 38.1(i); *see Fredonia State Bank v. General Am. Life Ins.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (appellate court has discretion to waive points of error due to inadequate briefing).

Finally, appellants complain the jury charge did not ask the jury whether Mello's claims were barred by the statute of limitations, the doctrine of estoppel by deed, and laches. Limitations, estoppel, and laches are affirmative defenses. *See* TEX. R. CIV. P. 94. The failure to request a jury question on an affirmative defense results in waiver by the party relying on it unless the issue is conclusively established as a matter of law. *See Akin v. Dahl,* 661 S.W.2d 911, 913 (Tex. 1983) (issue regarding mismanagement of trust funds, which was not submitted to the jury, was waived because it was not established as a matter of law); *Smith v. Levine,* 911 S.W.2d 427, 434 (Tex. App.—San Antonio 1995, writ denied) (affirmative defense waived where evidence raised question of fact and party failed to request jury question thereon); *see also* TEX. R. CIV. P. 279. Appellants did not submit a written request, in substantially correct wording, for specific jury questions on their affirmative defenses; therefore, we consider whether any of these defenses were conclusively established. Our determination of whether appellants conclusively established their affirmative

defenses also encompasses appellants' second, fifth, and sixth issues, in which appellants contend they established these defenses.

At trial, Mello did not dispute the date on which the deeds were signed or the date on which anyone filed suit to set the deeds aside. Instead, Mello contended Martha Jane did not have the mental capacity to execute the deeds or to challenge the deeds from the date of their execution to the present, and the jury agreed with Mello. Therefore, any jury finding that suit was not filed within the appropriate time period would be rendered immaterial based on the jury findings that Martha Jane lacked the capacity to execute the deeds and to file suit to set aside the deeds. *See* TEX. CIV. PRAC. & REM. CODE ANN. §16.001(b) (Vernon 2002) (time of legal disability not included in limitations period); *Garza v. Kennedy*, 299 S.W. 231, 233 (Tex. 1927) (person laboring under legal disability is not chargeable with laches). Accordingly, we next consider appellants' eleventh issue on appeal, in which they assert Mello failed to prove Martha Jane lacked sufficient mental capacity to sign and understand the deeds in question at the time she executed the deeds.[2]

## MENTAL CAPACITY

The law presumes the grantor of a deed has sufficient mental capacity at the time of its execution to understand her legal rights; therefore, the burden of proof rests on those seeking to set aside the deed to show the grantor lacked mental capacity at the time of the execution of the deed. *Decker v. Decker*, 192 S.W.3d 648, 652 (Tex. App.—Fort Worth 2006, no pet.); *Jackson v. Henninger,* 482 S.W.2d 323, 324-25 (Tex. Civ. App.—Austin 1972, no writ). The term "mental

---

[2] On appeal, appellants do not challenge the sufficiency of the evidence in support of the jury's finding, in question number four, that Martha Jane did not have the mental capacity to begin and pursue litigation to challenge the deeds "after the execution of such deeds until the present." This unchallenged finding alone defeats appellants' affirmative defenses. However, in the interest of justice we consider all the evidence with regard to Martha Jane's mental capacity.

capacity" means the grantor at the time of the execution of the deed must have had sufficient mind and memory to understand the nature and effect of her act. *Decker*, 192 S.W.3d at 652; *Jackson*, 482 S.W.2d at 325. To demonstrate the state of the grantor's mental capacity at the time of the conveyance, evidence of her mental capacity prior and subsequent to the time of the conveyance is admissible. *Id.; see also Haile v. Holtzclaw,* 414 S.W.2d 916, 926 (Tex. 1967).

In support of their argument that Mello did not carry her burden of showing Martha Jane lacked the mental capacity to sign the four deeds, appellants point to the following testimony. On December 28, 1988, Adam Torres was present at Martha Jane's house and he witnessed Martha Jane execute three of the deeds conveying property to Jerry. Torres said he had known Martha Jane for about forty years, and, on December 28, 1988, he believed her to be of sound mind and that she understood the deeds and signed the deeds freely and voluntarily. According to Torres, Martha Jane wanted to give Jerry the property because "he was the only one who would help her." Paul Gonzales was also present at Martha Jane's house on December 28, 1988, at which time he signed Martha Jane's will as a witness. Gonzales testified he had known Martha Jane for about five or six years, and on December 28, 1988, he believed her to be "in perfect condition" and she signed her will voluntarily. According to Gonzales, Martha Jane gave everything to Jerry under her will because he "always took care of her. And no body else did." Gonzales was also present when Martha Jane signed the three deeds, and he said she understood the deeds and signed them freely and voluntarily. Finally, Ernest Guajardo testified he first met Martha Jane when he signed Martha Jane's second will as a witness on February 22, 1997. Although Guajardo did not know Martha Jane, he said he had known Jerry for fifteen to twenty years. According to Guajardo, Martha Jane gave everything to Jerry under her will because Jerry "was the only one that was caring for her at the time." He believed

her to be "of sound mind" on February 22, 1997. Guajardo was also present when Martha Jane signed the fourth deed, and he said she understood the deed and she signed it voluntarily.

On the other hand, Mello points to the following evidence to support her contention that Martha Jane lacked the mental capacity to sign the four deeds. In October 1979, Martha Jane's husband died in an accident with a drunk driver. In February 1980, one of her sons was murdered in a gun battle in which Jerry also was wounded. At the time, Martha Jane was seventy years old. While en route to the hospital to see her two sons, Martha Jane suffered a heart attack, resulting in her hospitalization. She was, therefore, unable to attend her son's funeral. According to one of her daughters, following the deaths of her husband and son, Martha Jane became "very . . . depressed, very emotional, very lost." Another daughter testified that, sometime in 1985, her mother did not recognize one of her other sons and refused to allow him into the house. Also in the mid-1980's, Martha Jane "would rattle on and say there were spiders or she could see things . . . in the wall . . . or she would see . . . faces or monsters, like figures that came to life." She would also claim to hear "heavenly music." Martha Jane's daughters testified that their mother was often bruised from falling, and that she was malnourished and dehydrated. In the 1980's Martha Jane was referred to a mental health psychiatric hospital.

Dorothy Mello testified about her mother's mental condition as follows:

> [After the death of her husband and son, and the shooting of another son, Martha Jane] was very distraught. She was heartbroken. She was depressed. She was confused. She was forgetful. . . . [Her emotional problems got] much worse. . . . [S]he would not accept my brother's death. And she feared for Jerry's life. And she worried about everything. . . . But it didn't much improve through now. Well, now it's much, much worse. It just got worse in her forgetting. [Her mother saw dead people and heard] angelic music.

The record also reveals that, in 1987 at the age of seventy-seven, Martha Jane was diagnosed with dementia. One year later, she executed the first three deeds. She was again hospitalized in 1994 at the age of eighty-four because she was hallucinating. Almost three years later, she executed the fourth deed. After reviewing the evidence, we conclude the evidence is legally and factually sufficient to support the jury's finding that Martha Jane lacked the mental capacity to execute the four deeds and lacked the mental capacity to pursue litigation to set the deeds aside.[3]

Based on this record, we conclude appellants' defenses of limitations, estoppel, and laches were not conclusively established; therefore, appellants were not entitled to jury instructions on these defenses. Because the evidence is factually sufficient to support the jury's finding that Martha Jane lacked the mental capacity to execute the four deeds and because the jury's finding that she lacked the mental capacity to pursue litigation to set the deeds aside is unchallenged, and those findings are dispositive of all complaints on appeal regarding ownership of the four properties, we do not address appellants' complaints regarding (1) whether the jury should have been asked if the four properties belonged to Martha Jane or if the deeds were void, (2) whether Jerry proved Martha Jane conveyed the four properties to him by gift deeds, (3) whether Martha Jane's conveyance of the properties was

---

[3] As for when Mello pursued litigation to set the deeds aside, she testified she was not aware of the deeds executed by her mother until after she began the guardianship proceeding in July 2007. In the course of applying for guardianship of her mother's person and estate, Mello filed lis pendens in the real property records of the four properties. After Mello was appointed temporary guardian, Jerry filed his trespass to try title suit on September 14, 2007. Mello was appointed permanent guardian on September 27, 2007. On November 29, 2007, Mello, as guardian, filed her counterclaim.

caused by Jerry's breach of a fiduciary duty to her,[4] and (4) whether Jerry was the legal and equitable owner of any of the properties.[5]

## CONVERSION

The jury found that appellants converted Martha Jane's funds held at Bank of America, and awarded Martha Jane $8,474.54 in damages. In their eighth issue, appellants assert the $8,474.54 belonged to Jerry. According to appellants, Martha Jane's only source of income was her retirement benefits, which was insufficient to meet her monthly needs. Appellants contend that when Jerry discovered Martha Jane's financial accounts "were in shambles," he supplemented her income from 1985 to June 2007 by depositing money into a joint account belonging to Martha Jane and Mary Alice. After learning Mello had been appointed guardian, Mary Alice withdrew the funds from the bank account. We construe appellants' argument as a challenge to the factual sufficiency of the evidence in support of the jury's finding.

At trial, Jerry testified he opened a joint checking account in 1985 with a $4,000.00 deposit in the name of Martha Jane and Mary Alice. However, in the last four years leading up to the underlying 2007 lawsuit, the only deposits made into the account were Martha Jane's Social Security and her late husband's military retirement payments. Jerry explained he paid his mother's expenses out of his own accounts, and although only her government checks went into her account, he was saving that money to pay for her funeral. Jerry admitted his wife withdrew about $9,000 from his mother's account when Mello told him she was applying for guardianship of their mother. We

---

[4] The jury also found that Jerry breached the fiduciary duty he owed to Martha Jane with regard to the execution of the four deeds.

[5] For these reasons, we also do not address appellants' complaints that the trial court erred in denying their motion for new trial, motion to enter judgment, motion for judgment notwithstanding the verdict, and objections to entry of judgment in favor of Mello.

conclude this evidence is sufficient to support the jury's finding that appellants converted Martha Jane's funds.

## TRIAL COURT BIAS

In their twelfth issue, appellants assert the trial court's bias toward them and its failure to recuse deprived them of a fair trial. In support of their contention, appellants allege fourteen instances of "bias and prejudice," only two of which are supported by citations to the record. An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). Because appellants have inadequately briefed twelve of their complaints, nothing is presented for our review. *Id.*; *see Fredonia State Bank*, 881 S.W.2d at 284-85. As to the two complaints that contain record citations, one is to a comment made by the trial court after the jury returned its verdict when the trial court stated it would recuse itself from consideration of the will contest.[6] We do not address this complaint because appellants do not explain how this comment created bias toward them during the trial. As to the second complaint, appellants refer this court to forty pages of transcript spread over four volumes of the reporter's record. We need not reach this complaint because appellants do not set out the substance or location in the record of any specific statements by the trial court on which they rely. *Emerson Elec. Co. v. Am. Permanent Ware Co.,* 201 S.W.3d 301, 313 (Tex. App.—Dallas 2006, no pet.).

## STATEMENTS BY TRIAL COUNSEL

In their fourteenth issue, appellants assert the trial court "should have allowed Jerry to make his timely offer of proof regarding the slanderous, false statements made by" Mello's trial counsel.

---

[6] Martha Jane died during the pendency of the suit.

None of appellants' contentions are supported by citations to the record. Because appellants have inadequately briefed this issue, nothing is presented for our review. TEX. R. APP. P. 38.1(h); *see Fredonia State Bank*, 881 S.W.2d at 284-85.

## CONCLUSION

We overrule appellants' issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice