

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00273-CV

**WILLIAM KOVAR AND LINDA KOVAR,**

**Appellants**

**v.**

**GARY SEAY, TONI SEAY AND ANDREW SEAY,**

**Appellees**

**From the County Court at Law No. 1**
**Johnson County, Texas**
**Trial Court No. P201321365-A**

## MEMORANDUM OPINION

In eleven issues, appellants, William and Linda Kovar, challenge various rulings

by the trial court and numerous findings by the jury in favor of appellees, Gary Seay,

Toni Seay, and Andrew Seay. We affirm.

### I.    BACKGROUND

This proceeding is ancillary to a probate case involving the estate of Franklin

Delano Seay, the father of Linda Kovar and Gary Seay. In 2004, Franklin signed a will,

which specified that his property at 1120 Bois D'Arc in Grandview, Texas, would be left as a life estate for his then wife, Charline Ledford, and would be divided equally between his children, Linda and Gary, upon the deaths of both Franklin and Charline. Gary, Toni (Gary's wife), and Andrew (Gary's son) alleged that, in 2008, Franklin was diagnosed with Alzheimer's disease and pre-senile dementia with depressive features. Shortly after this diagnosis, Charline passed away. After Charline's death, Franklin became embroiled in a legal dispute with Charline's family regarding Charline's estate.

In an attempt to stave off a subsequent legal dispute, Gary and Toni purportedly made an agreement with Linda and her husband, William, regarding how the estate should be divided upon Franklin's death. Gary and Toni alleged that the property would be split into two sections: the house and one acre would go to Gary and the remainder of the property would pass to Linda.

The record established that Gary and Toni lived in Nacogdoches, Texas, for a large portion of this time, and that William and Linda served as caretakers for Franklin. At some point, Franklin's physical and mental health deteriorated to the point that he needed to be placed in a nursing home. William and Linda informed Gary and Toni that, in order for Medicare to cover Franklin's care in the nursing home, Franklin needed to transfer the entire property at 1120 Bois D'Arc out of his name and that it needed to be done quickly. Knowing they could not take on the expenses associated with maintaining

the property, Gary and Toni allegedly agreed to the transfer of the property to William, though Gary and Toni argued that this agreement was supposed to be temporary.

On September 21, 2011, son-in-law William took Franklin to a lawyer to have a deed prepared to transfer the property to William. Once the property was transferred, Franklin was able to move into the nursing-home facility. However, a few months later, Franklin passed away.

After Franklin's death, Gary and Toni moved from Nacogdoches to live in the house at 1120 Bois D'Arc. Things seemed to go reasonably well until William demanded that Gary and Toni pay rent for the house. Tensions boiled over in 2015, when Gary and Toni moved out of the house to return to Nacogdoches because they could not maintain jobs in Grandview, and because they believed William and Linda were going to evict them for not paying rent.

This proceeding commenced with the filing of a petition by Gary, Toni, and Andrew seeking to invalidate the deed to William, as well as damages for fraud, statutory fraud, and breach of fiduciary duty, among other things. The trial court heard and denied a plea to the jurisdiction filed by William and Linda, which was characterized by the trial court as a summary judgment.

Eventually, the matter was tried to a jury. The jury returned a verdict in favor of Gary, Toni, and Andrew, determining that the deed to William was invalid and awarding $132,500 in damages and $80,000 in attorney's fees in favor of Gary, Toni, and Andrew.

The trial court entered judgment on the verdict, wherein the trial court determined the deed from Franklin to William to be invalid, awarded Gary, Toni, and Andrew $80,000 in attorney's fees, and ordered that the entire property comprised of 11.7655 acres and all improvements thereon be considered as part of Franklin's estate to be distributed in the probate proceeding. This appeal followed.

## II.    ANALYSIS

### A.    William and Linda's Plea to the Jurisdiction, Which was Treated as a Motion for Summary Judgment

In their first three issues, William and Linda challenge the trial court's denial of their plea to the jurisdiction, which was treated as a motion for summary judgment, as well as various post-judgment motions filed. Specifically, William and Linda argue that Gary, Toni, and Andrew's challenge to the validity of the deed to William was barred by statute of limitations, the statute of frauds, and laches. William and Linda also contend that the trial court erred by denying their plea to the jurisdiction, purported summary-judgment motion, and various post-judgment motions on these grounds.[1]

---

[1] In their first three issues, William and Linda not only challenge the trial court's ruling on their "Plea to the Jurisdiction," but also various post-judgment motions that were filed. This additional argument is arguably multifarious. *See In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied) (observing that a multifarious issue or point of error is one that raises more than one specific ground of error). Courts may disregard any assignment of error that is multifarious. *Rich v. Olah*, 274 S.W.3d 878, 885 (Tex. App.—Dallas 2008, no pet.). However, a reviewing court may consider a multifarious issue if it can determine, with reasonable certainty, the error about which the appellant wants to complain. *Id.* We endeavor to do so in William and Linda's first three issues.

Whether a court has subject-matter jurisdiction is a question of law, and we review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court considers any relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227; *see Tex. S. Univ. v. Mouton*, 541 S.W.3d 908, 912-13 (Tex. App.—Houston [14th Dist.] 2018, no pet.). If the evidence creates a fact question regarding jurisdiction, then the trial court must deny the plea, and the fact issue will be resolved by the factfinder. *Miranda*, 133 S.W.3d at 227-28. In such cases, the summary-judgment standard found in Texas Rule of Civil Procedure 166a(c) is applicable. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016) ("[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction.").

In what they labeled as their "Original Answer, Special Exceptions, and Plea to the Jurisdiction," filed on September 7, 2018, William and Linda alleged numerous affirmative defenses, including statute of limitations, statute of frauds, and laches, among others.[2] In their prayer, William and Linda requested that the trial court,

> *dismiss* the Plaintiff's Petition and will sustain the exceptions to the Plaintiffs' Petition and order Plaintiff to replead and after notice and

---

[2] William and Linda did not attach any exhibits to their plea to the jurisdiction.

hearing or trial, enters judgment in favor of Defendants, awards Defendants the costs of court, attorney's fees, and such other and further relief as Defendants may be entitled to in law or in equity.

(Emphasis added). The nature of William and Linda's filing is that of a plea to the jurisdiction. However, this is problematic.

Claims such as statute of limitations, statute of frauds, and laches are pleas in bar, not jurisdictional pleas. *See* TEX. R. CIV. P. 94; *Tex. Hwy Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967). If a plea in bar is sustained, a take-nothing judgment finally disposing of the controversy will be rendered on the merits for the defendant. *See Jarrell*, 418 S.W.2d at 488; *Kelley v. Bluff Creek Oil Co.*, 158 Tex. 180, 309 S.W.2d 208, 214 (1958). Conversely, a plea to the jurisdiction is a challenge to the court's power to hear the suit, which, if sustained, requires dismissal of the case. *See Jarrell*, 418 S.W.2d at 488; *see also Nat'l Life Co. v. Rice*, 140 Tex. 315, 167 S.W.2d 1021, 1024 (Tex. Comm'n App. 1943) (defining jurisdiction as "the power conferred upon a court by the Constitution and laws to determine the merits of that suit as between the parties and to carry its judgment into effect").

As stated above, William and Linda asserted pleas in bar within their filing labeled "Plea to the Jurisdiction" and asked for the trial court to dismiss the claims of Gary, Toni, and Andrew. This was not proper. *See In re A.M.*, 936 S.W.2d 59, 62 (Tex. App.—San Antonio 1996, no writ) ("A plea in bar is not the proper subject matter of a preliminary hearing unless the parties agree to such method of disposition or summary judgment

procedure is utilized." (citing *Kelley*, 309 S.W.2d at 214; *Walker v. Sharpe*, 807 S.W.2d 442, 447 (Tex. App.—Corpus Christi 1991, no writ))).

And to the extent that William and Linda's "Original Answer, Special Exceptions, and Plea to the Jurisdiction" could be construed as a motion for summary judgment, as the trial court purportedly did, it is well settled that where the movant unsuccessfully moves for summary judgment and subsequently loses in a trial on the merits, as is the case here, the order denying the summary judgment cannot be reviewed on appeal.[3] *See Reule v. M&T Mortg.*, 483 S.W.3d 600, 612 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citations omitted); *see also S.E.A. Leasing, Inc. v. Steele*, No. 01-05-00189-CV, 2007 Tex. App. LEXIS 1337, at **5-6 (Tex. App.—Houston [1st Dist.] Feb. 22, 2007, pet. denied) (mem. op.) (concluding that a statute-of-limitations complaint raised in a summary-judgment motion that was denied was not preserved for appellate review because the denial of a summary-judgment motion is not reviewable after a trial on the merits (citing

---

[3] To the extent that it can be argued that William and Linda's limitations complaint was preserved by raising it in their various post-judgment motions, we emphasize that Texas Rule of Civil Procedure 279 states the following: "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX. R. CIV. P. 279. In this case, William and Linda did not request a jury submission regarding the affirmative defense of statute of limitations. Accordingly, we cannot conclude that William and Linda properly preserved their complaint about the statute of limitations through the raising of the complaint in various post-judgment motions. *See id.*; *see also City of Austin/Travis County Landfill Co. v. Travis County Landfill Co.*, 25 S.W.3d 191, 204 (Tex. App.—Austin 1999), rev'd on other grounds, 73 S.W.3d 234 (Tex. 2002) ("Furthermore, the City did not request a jury submission regarding the statute of limitations affirmative defense. *See* TEX. R. CIV. P. 279 (parties must submit questions regarding defenses in order to preserve error). The City's contention that it properly preserved these issues through its motion for judgment notwithstanding the verdict is without merit.").

*Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 187-88 (Tex. App.—Houston [1st Dist.] 2005, no pet.))).

Additionally, William and Linda argue that the trial court also erred by denying their motion for mistrial, motion for judgment notwithstanding the verdict, and motion for new trial based on their affirmative defenses of statute of limitations, statute of frauds, and laches. The record shows that William and Linda only filed a motion for new trial, a motion for mistrial, and a motion to disregard jury answers. Moreover, we note that, other than mentioning the post-judgment motions in various headings, William and Linda do not specifically argue or provide authority and citations to the record regarding the trial court's ruling on their post-judgment motions. We therefore find these complaints to be inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

Based on the foregoing, we cannot conclude that William and Linda have demonstrated error on the part of the trial court in their first three issues. Accordingly, we overrule William and Linda's first three issues.

B.    **Irrelevant Issues**

In their fourth through eleventh issues, William and Linda challenge the legal- and factual-sufficiency of the evidence supporting several findings made by the jury.

Many of the findings challenged by William and Linda are not relevant to the trial court's final judgment. The only relevant issues are William and Linda's fifth, tenth, and eleventh issues. Therefore, because they are irrelevant to the trial court's final judgment,

which determined the deed from Franklin to William to be invalid, awarded Gary, Toni, and Andrew $80,000 in attorney's fees, and ordered that the house and one acre be considered as part of Franklin's estate to be distributed in the concurrent probate proceeding, we overrule William and Linda's fourth, sixth, seventh, eighth, and ninth issues.

## C.    Franklin's Mental Capacity

In their fifth issue, William and Linda challenge the sufficiency of the evidence supporting the jury's finding in question 1 that Franklin lacked sufficient mental capacity to transfer title to real property at the time he signed a general warranty deed to the property to William. William and Linda also complain that the trial court erred by failing to grant their motion for mistrial, motion for JNOV, and motion for new trial on this issue.

In a legal-sufficiency review, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in favor of the verdict. *Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 286 (Tex. 1998). To determine whether legally-sufficient evidence supports a challenged finding of fact, we credit evidence that supports the finding if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See City*

*of Keller*, 168 S.W.3d at 819. The factfinder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* As such, reviewing courts must assume that the factfinder decided all credibility questions in favor of the findings and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *Id.* at 819-20.

Moreover, it is within the factfinder's province to resolve conflicts in the evidence. *Id.* at 820. Consequently, we must assume that, where reasonable, the factfinder resolved all conflicts in the evidence in a manner consistent with the findings. *Id.* Where conflicting inferences can be drawn from the evidence, it is within the province of the factfinder to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id.* at 821. Thus, we must assume that the factfinder made all inferences in favor of the findings if a reasonable person could do so. *Id.* The final test for legal sufficiency must always be "whether the evidence at trial would entitle reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

In a factual-sufficiency review challenge, an appellate court must consider the weight of all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We may not pass upon the witnesses'

credibility or substitute our judgment for that of the factfinder, even if the evidence would support a different result. *2900 Smith, Ltd. v. Constellation New Energy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment. *Id.*

Documents executed by one who lacks sufficient legal or mental capacity may be avoided. *Kinsel v. Lindsey*, 526 S.W.3d 411, 419 (Tex. 2017). A person has the mental capacity to execute documents effectuating the transfer of property if he "'appreciated the effect of what [he] was doing and understood the nature and consequences of [his] acts and the business [he] was transacting.'" *Id.* (quoting *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969)). Thus, the proper inquiry is whether the person had capacity on the days he executed the documents at issue. *Id.* Courts may look to the state of mind at other times if it tends to show one's state of mind on the day the document was executed. *Id.*

The law generally presumes that a person possesses the requisite mental capacity at the time of executing the deed; therefore, a party contesting capacity bears the burden of proof. *Decker v. Decker*, 192 S.W.3d 648, 652 (Tex. App.—Fort Worth 2006, no pet.) (citing *Jackson v. Henninger*, 482 S.W.2d 323, 324-25 (Tex. Civ. App.—Austin 1972, no writ)). Here, William and Linda challenge the sufficiency of the evidence supporting the

jury's finding that Franklin lacked mental capacity at the time he transferred title to real property in favor of William. A challenge to the legal sufficiency of the evidence supporting an adverse finding on an issue for which the appellant did not have the burden of proof requires the appellant to show that no evidence supports the adverse finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). Furthermore, we will sustain a challenge to the legal sufficiency of the evidence if there is a complete absence of evidence of a vital fact, we are barred by the rule of law or evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a scintilla, or the evidence conclusively establishes the opposite of a vital fact. *Dallas Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 57-58 (Tex. 2015) (per curiam). In other words, William and Linda must show that the evidence conclusively demonstrated that Frank had capacity to execute the deed. The question of capacity is generally one for the jury. *In re Estate of Robinson*, 140 S.W.3d 782, 793-94 (Tex. App.—Corpus Christi 2004, pet. denied). Moreover, we review all of the evidence and inferences in the light most favorable to the jury's finding that Franklin lacked the requisite mental capacity at the time of execution of the deed. *See City of Keller*, 168 S.W.3d at 807.

> Question 1 of the jury charge provided as follows:
>
> Did Franklin ("Frank") Seay lack sufficient mental capacity to transfer title to real property when he signed the general warranty deed to William Kovar dated September 20, 2011?

A person lacks sufficient mental capacity to execute a deed if he lacks sufficient mind and memory to understand the nature and consequences of his acts and the business he is transacting.

The jury answered this question in the affirmative.

In arguing that the evidence is insufficient to support the jury's finding that Franklin lacked sufficient mental capacity to transfer title to real property, William and Linda rely on the testimony of Jon Paul Hammond, the attorney who met with William and Franklin regarding the transfer of real property. Hammond recounted that Franklin did not appear to be under any coercion or duress at the time the deed was executed. Specifically, Hammond noted,

I wouldn't have let him have signed if I thought he was under any kind of duress. And after I went through the document with him—and it took some time, 30 to 45 minutes, to explain each of the elements of the document, make sure it's exactly what he wanted done, and he stated that's what he wanted to do, and then he executed it in front of a notary public to make it official.

Hammond further testified that Franklin "had a good sense of humor, and I visited with him quite a bit, so I kind of feel like I knew the gentleman."

On the other hand, Gary, Toni, and Andrew presented the testimony of Joe Michael White, M.D., who was Frank's primary-care physician from 2001 until Franklin passed away. Dr. White was familiar with Franklin's condition at the time the deed was executed. Dr. White explained that his medical definition of competency is "[b]eing able to make, you know, rational, learned decisions about something and then deal with it appropriately using both past information and present information to solve the

problem." When asked, Dr. White opined that Franklin was most likely not competent at the time of the signing of the deed. At this time, Franklin had "Alzheimer's-type dementia and probably multi-infarct dementia as well." Beginning in 2009, Dr. White saw a deterioration of Franklin's mental faculties, which included Franklin being unable "to take care of himself such as with the activities of daily living, toileting, bathing, preparing meals, that kind of thing." Franklin was also unable to ambulate because of his diabetes and peripheral neuropathy, and he was suffering from depression at that time due to the passing of his second wife in 2008. Later in his testimony, Dr. White testified to the authenticity of the Client Coordination Note Report dated June 28, 2011, which stated that Franklin,

> does nothing for himself. He cleans himself up only when home health care visits. He is incontinent of urine. . . . He would like to be estranged from his daughter [Linda] who lives very nearby and is controlling, he states. He is very lonely since his second wife died, but his daughter would not allow him female company. . . . His memory is very poor and he had no idea what year it was. . . . He has no idea why he is taking a thyroid pill. . . .

Although the evidence was contradictory, viewing the evidence in the light most favorable to the jury's verdict, we conclude that there is more than a scintilla of evidence to support the jury's finding that Franklin lacked sufficient mental capacity when he executed the deed in favor of William. *See Kinsel*, 526 S.W.3d at 419; *Dallas Nat'l Ins. Co.*, 470 S.W.3d at 57-58; *Graham Cent. Station, Inc.*, 442 S.W.3d at 263; *City of Keller*, 168 S.W.3d at 807; *see also Decker*, 192 S.W.3d at 652; *In re Estate of Robinson*, 140 S.W.3d at 793-94. Furthermore, viewing the evidence in a neutral light, we cannot conclude that the jury's

verdict as to question 1 is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We therefore hold that the evidence is legally- and factually-sufficient to support the jury's verdict in question 1 as to Franklin's mental capacity at the time the deed was executed in favor of William. Additionally, in light of the foregoing conclusions, we cannot conclude that the trial court erred by failing to grant William and Linda's motion for mistrial, motion to disregard jury answers, and motion for new trial. Accordingly, we overrule William and Linda's fifth issue.

## D.     Appellees' Request for Attorney's Fees

In their tenth issue, William and Linda complain about the jury's award of $80,000 in attorney's fees. Specifically, William and Linda contends that the evidence is insufficient to demonstrate that the award of attorney's fees was reasonable and that the trial court erred by failing to grant their motion for mistrial, motion to disregard jury answers, and motion for new trial on this issue.

To secure an award of attorney's fees from an opponent, the prevailing party must prove (1) the recovery of attorney's fees is legally authorized by statute or contract, and (2) the fees were reasonable and necessary for the legal representation. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). "[O]nly fees reasonable and necessary for the legal representation will be shifted to the non-prevailing party, and not necessarily for the amount contracted for between the prevailing party and its

attorney, as a client's agreement to a certain fee arrangement does not necessarily establish that fee as reasonable and necessary." *Id.* at 487-88 (citing *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). An amount incurred or contracted for is not conclusive evidence of reasonableness or necessity. *See id.* at 488. "The fee claimant still has the burden to establish reasonableness and necessity." *Id.*

The Texas Supreme Court has stated that a factfinder should consider the following factors when determining what attorney's fees are reasonable and necessary:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co.*, 945 S.W.2d at 818 (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app (State Bar Rules, art. X, § 9);

*Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990)). These factors have generally become known as the "*Arthur Andersen* factors."

The Texas Supreme Court also recognizes an alternative method for determining the reasonableness and necessity of attorney's fees—the lodestar method. In *Rohrmoos*, the Texas Supreme Court clarified that "we intend[] the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." 578 S.W.3d at 497-98. Therefore, under the lodestar method, "the fact finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* at 498 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)). Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when those services were performed, (4) the reasonable amount of time required to perform those services, and (5) the reasonable hourly rate for each person performing such services. *Id.* (citing *El Apple I, Ltd.*, 370 S.W.3d at 762-63). When awarding an attorney's fee under this method, the factfinder must first determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Id.* Next, to get the lodestar, the number of hours is multiplied by the applicable rate to produce the base lodestar figure. *Id.* The base lodestar may be adjusted up or down by the factfinder if relevant factors indicate an adjustment is necessary to reach a

reasonable fee in the case. *Id.* The *Arthur Andersen* factors may justify an adjustment, but considerations already incorporated into the base calculation may not be applied to rebut the presumption that the base calculation reflects reasonable and necessary attorney's fees. *Id.* (citing *Arthur Andersen & Co.*, 945 S.W.2d at 818).

An attorney's affidavit is sufficient proof of attorney's fees when the affidavit is unchallenged. *In re Friesenhahn*, 185 S.W.3d 16, 21 (Tex. App.—San Antonio 2005, pet. denied) ("Because the attorney's fees were unchallenged, the affidavit of the lawyer as an expert on his fees is sufficient summary judgment proof of the reasonableness of the fees requested." (citing *Querner Truck Lines, Inc. v. Alta Verde Indus., Inc.*, 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ))).

In the instant case, James E. Coleman, counsel for Gary, Toni, and Andrew, testified that he filed eight different petitions in this case with each being about forty pages in length. Coleman also noted that this had been a very long and very difficult case with time periods spanning from 2008 through 2016. Coleman stated that he spent more than 360 hours on this case. He acknowledged that this was his first jury trial and that he has three years' legal experience. Given this, Coleman stated that his fee of $200 per hour was reasonable for the locality, as well as his experience, especially considering counsel for William and Linda, who has more experience, charges $320 per hour. Coleman's testimony was uncontroverted.

Coleman's testimony touches on several of the *Arthur Andersen* factors, and given the difficulty of this case, there is justification for adjusting up from the base lodestar figure of $72,000 (360 hours x $200 per hour). Accordingly, we conclude that the evidence is legally and factually sufficient to support the jury's award of $80,000 in attorney's fees; thus, the trial court did not err by denying William and Linda's motion for new trial on this issue. *See Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (noting that the reasonableness of the amount of attorney's fees is left to the factfinder, and a reviewing court may not substitute its judgment for the jury's) (citing *Ragsdale*, 801 S.W.2d at 881)); *see also Bocquet v. Herring*, 972 S.W.2d 18, 21 (Tex. 1998) (noting that reasonableness and necessity of attorney's fees are "question[s] for the jury's determination"). We overrule William and Linda's tenth issue.

E.    **Appellants' Request for Attorney's Fees**

In their eleventh issue, William and Linda challenge the jury's answer to question 15 in the charge, whereby the jury concluded that William and Linda should not be awarded attorney's fees. Like before, William and Linda challenge the evidentiary sufficiency of the jury's conclusion, and they contend that the trial court erred by failing to grant their post-judgment motions on this issue.

In making their argument in this issue, William and Linda contend that they were forced to defend this case that should have been dismissed at the outset based on their affirmative defenses of statute of limitations, statute of frauds, and laches. Thus, William

and Linda argue that the trial court's erroneous failure to dismiss this case based on their affirmative defenses entitled them to an award of attorney's fees.

As we concluded earlier, William and Linda did not demonstrate that the trial court erred by failing to dismiss this case based on their affirmative defenses of statute of limitations, statute of frauds, and laches. With the premise of their attorney's-fees argument undermined, we conclude that this issue lacks merit. Accordingly, we overrule William and Linda's eleventh issue.

## III.  CONCLUSION

Having overruled all of William and Linda's issues on appeal, we affirm the judgment of the trial court.


JOHN E. NEILL
Justice


Before Chief Justice Gray
        Justice Davis, and
        Justice Neill
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed December 22, 2020
[CV06]


*(Chief Justice Gray concurs in the Court's judgment which affirm the trial court's judgment.  A separate opinion will not issue.  Chief Justice Gray does, however, provide this note to explain the analysis that he would apply to the issues raised by the appellant.

Issues 1, 2, and 3 are so multifarious that the members of the Court cannot agree on what Kovar actually argues is the error.  In Issue 2, Kovar argues about the application

of the statute of frauds, and thus, the issue appears to relate solely to the breach of contract claim which is unnecessary to review because the judgment is not based on a breach of contract. Accordingly, we need not decide Issue 2.

As to issues 1 and 3, Kovar contends that the trial court erred by denying: 1) a plea to the jurisdiction that was treated as a motion for summary judgment, 2) a motion for mistrial, 3) a motion for judgment notwithstanding the verdict, and 4) a motion for new trial. Some argument regarding each of these theories was asserted in these pleadings. Issue 1 relates to the affirmative defense of the statute of limitations and Issue 3 relates to the affirmative defense of the equitable doctrine of laches, both as applicable to a suit to set aside a deed. Both issues attack the consequences of the jury's answer to question 1, that Franklin lacked the mental capacity to execute the deed. Thus, in each issue, Kovar asserts at least four or five different errors were committed by the trial court. That alone would justify determining the issues are multifarious and overruling the issues as improperly briefed.

But peering into the limited depths of the arguments in Issue 1, it appears Kovar is arguing that Kovar proved as a matter of law the suit was filed after the statute of limitations had expired. The deed was executed on September 20, 2011. Suit to set aside the deed was filed on July 14, 2016. The statute of limitations to file a suit to set aside a deed is four years from the date the deed is executed. Thus, on its face, it appears Kovar is correct. But, and this is a really big but, Seay proved that on September 20, 2011, Franklin lacked the mental capacity to execute the deed. Thus, limitations never began to run, or was tolled, due to Franklin's incapacity; and it was therefore incumbent upon Kovar to prove when limitations commenced to run, or the tolling ceased. Limitations would commence, or cease being tolled, upon the removal of the incapacity. In this case, that was the date of Franklin's death, which was proved to be February 3, 2013. Thus, only 3 years and 5 months passed from the date Franklin died and the date suit was filed; that period of time being well within the 4-year statute of limitations.[4]

---

[4] Moreover, upon the death of Franklin, limitations would have been tolled another year or until the appointment of his personal representative to manage his estate pursuant to Texas Civil Practice and Remedies Code section 16.062. The briefs do not show who the personal representative of Franklin's estate is, but if it is Kovar, the limitations period may have been tolled for additional time due to the conflict of interest and potential breach of fiduciary duty in failing to bring the suit to set aside the deed. But I digress because that period due to his personal representative not filing the suit as a result of a possible breach of fiduciary duty, as well as the automatic tolling upon death, is entirely unnecessary because the period of time during which Franklin was incapacitated is all that is necessary to bring the time for filing the suit within the period of the statute of limitations. This counter defense was pled by Seay and is not addressed by Kovar in his arguments for having proved limitations as a matter of law.

Thus, Kovar did not prove as a matter of law the affirmative defense of the statute of limitations, and therefore, the trial court did not err in overruling any of the refenced motions on that basis. Issue 1 is properly overruled.

As to Issue 3, laches is an equitable defense that is largely, if not entirely, fact based and almost always based on conflicting evidence to determine the reasonableness of a delayed action. To obtain the benefit of the doctrine of latches, it would have been necessary for Kovar to present evidence that supports a finding that, among other things, Kovar's position was changed due to inequitable conduct by Seay. In this issue, Kovar argues that Seay "unreasonably delayed asserting their claims: Appellees acted to their detriment because of the delay...." Even this conclusory allegation in the brief shows the fact-driven nature of this defense. By use of the term, "unreasonably," Kovar recognizes that this determination is based upon weighing evidence regarding the reason the action was delayed or taken when it was. Moreover, Kovar makes no argument about what evidence in the record supports the determination of any element of this equitable defense or how Kovar proved it as a matter of law. Thus, not only is the issue as briefed multifarious, but also when trying to review the allegation of conclusive proof as to the individual elements, the inadequacy of the briefing is again revealed. Moreover, there is conflicting evidence on virtually every element of this equitable defense. Accordingly Issue 3 is properly overruled.

Finally, as to Kovar's eleventh issue, I note that the jury's duty to answer this issue was conditioned on a negative response to Issue 1. The jury did not answer question 1 in the negative, and we have not determined that the jury's answer to issue one should be set aside or disregarded. Thus, because Kovar failed to secure a response necessary for the jury to be required to answer the question, and further because Kovar did not object to the conditional submission, Kovar has not preserved the issue regarding the determination of the amount of his attorney fees for our review. The issue is, therefore, properly overruled.

Based upon this alternative and additional analysis and reasoning of Issues 1, 2, 3, and 11, I would overrule each of these issues as the Court has done, but for other reasons. Accordingly, I respectfully concur in the judgment of the Court based on the review and disposition of the issues as raised by, and limited to, the briefs and arguments presented to the Court.)

